PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Lacy, S.J.

COMMONWEALTH OF VIRGINIA

v. Record No. 160132

HEATHER HOGSTON LAMBERT

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
December 15, 2016

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in reversing a school teacher's misdemeanor conviction for assault and battery of a special needs student.

## I.  FACTS AND PROCEEDINGS

Heather Hogston Lambert ("Lambert") was tried by the Circuit Court of Scott County ("trial court") upon an indictment charging assault and battery of a child in violation of Code § 18.2-57.  At the conclusion of a bench trial, Lambert was found guilty and sentenced to 30 days in jail with all 30 days suspended.

The evidence at trial proved that Lambert was a preschool special education teacher for Scott County Public Schools at Shoemaker Elementary School ("Shoemaker").  On January 10, 2013, Lambert was on "bus duty" outside Shoemaker when a school bus arrived carrying K.M., an eleven-year-old student with Downs Syndrome.  Lambert was not one of K.M.'s teachers, and she had no knowledge of K.M.'s individualized education plan.

A teacher's aide, Tina Williams ("Williams"), testified that she met K.M. at the bus drop-off area in front of the school.  As K.M. stepped off the bus, she handed Williams her backpack and blanket.  K.M. then "ran, scampered up the sidewalk" away from Williams and toward the school building.  Williams testified that "less than a minute" later, she observed Lambert pull K.M. out of the school building by her arm.  Williams stated that Lambert "called to me to come

and help her and I ignored her at first." Williams explained that "I really didn't want to get involved . . . Because I thought what [Lambert] was doing was wrong."

Williams further testified that as K.M. stepped off the bus she was "very happy" and "the best I had seen her all year." On prior occasions, upon arrival at school Williams would hold K.M.'s belongings until all other students had been dropped off, at which time Williams would either give K.M. her belongings or send K.M. "back out there" to retrieve the items. On cross-examination, Williams admitted that K.M. was "a stubborn little girl." However, Williams did not believe that K.M. needed to be disciplined or "have some sort of a teaching moment" as a consequence of leaving her backpack with Williams.

In a surveillance video of the event played at trial, K.M. was seen exiting a school bus and walking under a breezeway into the school building. Lambert followed K.M. into the school and walked back out holding K.M. by the arm. As the two walked toward the street, K.M. resisted and Lambert pulled her forward by the wrist. K.M. continued to resist Lambert as the pair moved down the sidewalk. On three occasions, Lambert stopped as K.M. bent at the waist and Lambert pulled K.M. by her wrist. When they stopped for a third time, the video showed Williams carrying K.M.'s coat and backpack and walking to where Lambert and K.M. were standing.

In her role as a therapeutic day treatment counselor for Family Preservation Services, Renda Keith ("Keith") interacted with K.M. on a daily basis at Shoemaker. Keith testified that K.M. often handed her backpack to Williams or another aide to indicate that it contained a note from K.M.'s mother or that "there's something in that backpack for us . . . to see." Like Williams, Keith also observed that K.M. "was in a good mood" and was "bouncing and grinning" when she first came through the school doors that morning. However, Keith testified

2

that Lambert "ran" through the lobby and "was loud and screaming at [K.M.] . . . to go outside . . . to get her book bag." "And then, [Lambert] got [K.M.] outside – pulling her outside." Keith stated that "I just didn't want [K.M.] to be pulled on," but Keith said she had been trained not to intervene in a teacher-student "power struggle" unless the teacher requested assistance. Both Williams and Keith testified that, after the incident, K.M. was upset, crying, had red marks on her arms, and "kept saying she wanted to go home."

Joseph Reed ("Reed"), also a counselor for Family Preservation Services, was talking with Keith in the front lobby of the school building when K.M. first came inside. Reed testified that Lambert looked "angered and agitated" as she "forcefully entered the school" and yelled at K.M., "[about] something [having] to do with [K.M.'s] coat and book bag." When Lambert confronted K.M. just outside the cafeteria, Reed testified that:

> [K.M.] was initially defiant. She became more and more upset as the situation progressed. She began crying, and screaming, and struggling, and attempted to sit down onto the floor to keep from being physically moved.

Reed stated that "there was a short struggle, and [Lambert] was eventually able to drag [K.M.] out of the school."

Stacy Wood ("Wood"), the assistant principal at Shoemaker, also testified for the Commonwealth at trial. The trial court qualified Wood, over Lambert's objections, as an expert witness in childhood special education to discuss the "appropriate techniques for escorting or prompting special needs children in the educational setting." Based on the surveillance video footage, Wood testified that Lambert did not employ the proper escorting technique. Wood explained that Scott County teachers are trained to use the "handle with care technique," which involves lifting a child by picking her up under her arms.

3

The Commonwealth also offered into evidence a May 17, 2012 letter from the Scott County School Board to Lambert. The letter, sent to Lambert as a "disciplinary measure" several months before the incident with K.M., instructed Lambert to "please use your teaching assistants in the room when disciplining a child. You should not put your hands on a student unless it is for instruction or for the safety of a child." Lambert objected to the relevance of the letter, but the trial court overruled her objection on the basis that Lambert would not be covered by the statutory school personnel exception for simple assault and battery charges afforded under Code § 18.2-57(G) if she had ignored the School Board's directive.

> I think it's very material if she had been instructed by the Scott County School Board or a supervisor that she was not to have physical contact with a child. She would not have the exception available to her any longer that the physical contact with a child was appropriate[,] if she could have none.

At the close of the Commonwealth's case, Lambert moved to strike the evidence, arguing that her physical contact with K.M. did not constitute assault and battery because it fell within the Code § 18.2-57(G)(i) exception. To be covered under that exception, a full-time school employee must be acting in the course and scope of her official capacity and the conduct at issue must be "incidental, minor or reasonable physical contact or other actions designed to maintain order and control." Code § 18.2-57(G)(i). Lambert argued that she did not intend to harm K.M., but instead sought to teach K.M. appropriate behavior. The trial court denied Lambert's motion, holding:

> I would find that the Commonwealth, through both its witness testimony and video evidence, has presented sufficient prima facie evidence of both the offense of simple assault and battery[. B]ased on the evidence I've heard I would find preliminarily that the Defendant's actions that I viewed here in the video and that have been testified to that included the touching, shouting, pulling viewed in their totality . . . were neither incidental, nor minor, nor reasonable contact designed to maintain order or control . . . and

4

that's what's required [for the exception] in [Code §] 18.2-57(G)(i) [to apply].

Lambert's sole evidence presented was her own testimony. She testified that K.M. had either thrown or dropped an item to the ground while stepping off the bus. Lambert stated that Williams picked up the item, either a coat or blanket, and that K.M. also handed her backpack to Williams before heading into the building. Lambert thought she heard Williams call out to K.M., asking her to retrieve her belongings, but K.M. continued walking away from Williams. At this point, Lambert said she followed K.M. into the school building and asked K.M. if she had heard Williams' call to return. K.M. said "no" and pushed away. Lambert took K.M.'s hand and led her back outside. Lambert testified that she used "an authoritative voice" and told K.M., "you need your stuff, let's go back outside." When K.M. resisted by bending at the waist and pulling away, Lambert placed both hands on K.M.'s wrist for "safety" because she was afraid that K.M. would "topple over." Lambert testified that K.M was large and stronger than her. Lambert described her motivation in leading K.M. outside:

> [K.M.] was given a formal direction to go – to come back and get her things. And, in all my training that I've had over the years, when a child is given a direct instruction and they don't follow it right away, then you are to redirect or prompt them to follow that instruction.

Eventually, Lambert led K.M. outside to the middle of the breezeway and called for Williams to bring K.M.'s belongings. Williams brought the items and helped Lambert assist K.M. to put on her coat and backpack. Once K.M. had her belongings, Lambert said "great job, you've got your stuff now, you can walk inside" and K.M. returned to the school building.

On cross-examination, the Commonwealth attempted to impeach Lambert with a written statement she prepared shortly after the incident. The prosecutor also asked Lambert whether three of the Commonwealth's witnesses were "not telling the truth today" since their testimony

5

conflicted with Lambert's. Lambert responded that "[t]hey are leaving things out . . . [b]ecause I know what I saw and I know what I heard."

Lambert again moved to strike the evidence, and the trial court again denied the motion, holding that Lambert's conduct did not fall under the exception for certain actions of school personnel outlined in Code § 18.2-57(G)(i). The trial court observed that Lambert's statements were "internally and inherently inconsistent."

> [O]bjectively, the actions would be outside the scope of employment of Ms. Lambert; and, subjectively, they would definitely be outside the scope of employment of Ms. Lambert since the prior action of the School Board, both verbally and in writing, if not limiting her scope of employment, certainly emphasized what would be appropriate contact . . . .

The trial court articulated an alternative holding regarding the application of the Code § 18.2-57(G) exception for school personnel. The trial court recognized the due deference to be given under the Code § 18.2-57(G) exception, stating: "I do, and will, give due deference to the teacher's judgment, but I can't give due deference to a lack of judgment in responding in what seems to me to be an extremely minor act of disobedience." The court clarified that, even if it accepted Lambert's version of the events, Lambert's physical contact with K.M. was still unreasonable.

> [W]hat I've viewed here would be an unreasonable response to the level of disobedience that is alleged, even if it's accepted in the Defendant's version of what's alleged. So, I would find that it is an unreasonable response even if it did occur. . . .

Accordingly, the trial court convicted Lambert of misdemeanor assault and battery under Code § 18.2-57. At her sentencing hearing, the trial court reiterated its finding that based on "the totality of the evidence," Lambert "overstepped her bounds and her role as someone who was on bus duty" and "just went too far."

6

Lambert appealed her conviction to the Court of Appeals, assigning error first to the trial court's failure to give appropriate deference as required by the Code § 18.2-57(G)(i) exception, and second to the trial court's admission of the School Board's May 2012 letter. In a published opinion, the Court of Appeals reversed Lambert's conviction and remanded the case to the trial court for a new trial. *Lambert v. Commonwealth*, 65 Va. App. 682, 692-93, 779 S.E.2d, 871, 875 (2015). The Court of Appeals held that the trial court erred in ruling that Lambert acted outside the scope of her official capacity and was "therefore not entitled to the benefit of" the Code § 18.2-57(G)(i) exception. 65 Va. App. at 690-91, 779 S.E.2d at 874-75.

> In effect, [the trial court] substituted the School Board's and Scott County's standards of conduct for that specified by the General Assembly in the criminal statute to determine that appellant could not have been acting within her "official capacity."

*Id.* The Court of Appeals also held that the trial court erred in withholding the "due deference" given to a teacher's "reasonable judgments" made for purposes of applying the Code § 18.2-57(G)(i) exception. *Id.* at 692, 779 S.E.2d at 875.

> The trial court did not determine whether appellant's understanding of events was, nonetheless, reasonable, and consequently, did not apply due deference to determine whether her contact with K.M. was reasonable.

The Commonwealth timely petitioned this Court for an appeal, and we awarded an appeal on the Commonwealth's three assignments of error:

1.    The Court of Appeals erred in holding that the trial court erroneously substituted the policies of the School Board and Scott County for the "official capacity" standard established by the General Assembly in Virginia Code § 18.2-57(G).

2.    The Court of Appeals erred in failing to conduct a harmless error analysis, and in failing to conclude that any trial court errors were harmless.

3.    The Court of Appeals erred in holding that the trial court inappropriately applied the "due deference" standard in Code § 18.2-57(G) because the record does not

7

support the Court of Appeals' finding that the trial court failed to properly consider Lambert's perspective "at the time of the event."

## II. ANALYSIS

### A. Standard of Review

The Commonwealth's appeal raises mixed questions of law and fact, requiring de novo review of the judgment of the Court of Appeals. *Williams v. Commonwealth*, 289 Va. 326, 332, 771 S.E.2d 675, 678 (2015). Furthermore, we review the facts from the trial court record and not the facts as articulated by the Court of Appeals.

> [T]he reviewing court must give the judgment of the circuit court sitting without a jury the same weight as a jury verdict. The appellate court has the duty to review the evidence that tends to support the conviction and to uphold the circuit court's judgment unless it is plainly wrong or without evidence to support it.

*Commonwealth v. Duncan*, 267 Va. 377, 384, 593 S.E.2d 210, 214 (2004) (citations omitted).

Moreover, we "review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 491, 496, 777 S.E.2d 851, 854 (2015).

> An appellate court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* (emphasis in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, (1979))).

### B. Exception to Assault and Battery

Code § 18.2-57(G) provides:

> "Simple assault" or "assault and battery" shall not be construed to include the use of, by any school security officer or full-time or part-time employee of any public or private elementary or secondary school while acting in the course and scope of his official capacity, any of the following: (i) incidental, minor or

8

> reasonable physical contact or other actions designed to maintain order and control.

An initial question is whether the school personnel exception applies to Lambert's conduct in this case. The Commonwealth urges us to adopt the trial court's reasoning and hold that Lambert was not covered by the Code § 18.2-57(G)(i) exception. Conversely, Lambert requests that we affirm the holding of the Court of Appeals, that "the trial court erroneously substituted the policies of the School Board and Scott County for the 'official capacity' standard established by the General Assembly." 65 Va. App. at 691, 779 S.E.2d at 875. In this appeal, however, we need not decide whether the School Board's disciplinary letter limited the scope of Lambert's employment.

Irrespective of the trial court's ruling whether Lambert was acting within the scope of her official capacity, the trial court's alternative holding provided an independent and sufficient basis upon which to support Lambert's conviction. While, in some cases, failure of a party to address an alternative holding of the trial court may necessitate affirmance on appeal, *see, e.g.*, *Johnson v. Commonwealth*, 45 Va. App. 113, 116, 609 S.E.2d 58, 60 (2005) (an alternative holding of the trial court may "legally constitute[s] a freestanding basis in support of the trial court's decision"), in this case both the petition for appeal in the Court of Appeals and the briefing by both sides in that court addressed the issue of the circuit court's alternative finding that—even according deference to the judgment of school personnel in the circumstances—the defendant's conduct was not a reasonable use of force on the facts presented in this record. The Court of Appeals did not address this issue, and in its petition for appeal in this case the Commonwealth continued to argue that theory as a basis for reversal of the Court of Appeals' decision. The third assignment of error granted in this appeal presents this issue as part of the argument that the circuit court properly applied Code § 18.2-57(G) because it held that, even according deference to the

9

defendant's perception of the events, her actions were unreasonable.  We therefore proceed to address this independently dispositive ruling, and it is not necessary to address the other bases articulated by the trial court and the Court of Appeals.  *See Boone v. C. Arthur Weaver Co.*, 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988).

## C.  The Trial Court's Alternative Holding

The Court of Appeals did not give sufficient consideration to the trial court's alternative holding—the "objective" ruling that, even under Lambert's version of the facts, Lambert's response to K.M. was still "unreasonable" and exceeded the physical contact permitted by school personnel under Code § 18.2-57(G)(i).  When it announced Lambert's conviction from the bench, the trial court held that even if there were a "reasonable reason for Ms. Lambert to be disciplining, directing [or] instructing" K.M., Lambert's actions nonetheless constituted an "unreasonable response to the level of disobedience that is alleged."

This finding of fact by the trial court satisfies the statutory directive in Code § 18.2-57(G)(i).  On the record, the trial court expressly recognized the need for due deference under the statutory school personnel exception to assault and battery charges afforded under Code § 18.2-57(G)(i), but explained that Lambert's judgment was unreasonable, even accepting her version of the facts.  Accordingly, the Court of Appeals incorrectly characterized the actions of the trial court when it held that the trial court failed to "determine whether [Lambert's] judgment was reasonable" given her perception of the events.  65 Va. App. at 692, 779 S.E.2d at 875.

The record is clear that the trial court's alternative holding afforded due deference to Lambert's "version of the facts," yet still determined that Lambert's physical contact with K.M. was "an unreasonable response."  The trial court found, as a matter of fact, that Lambert's actions, "the touching, shouting, [and] pulling, viewed in their totality . . . were neither

10

incidental, nor minor, nor reasonable." That factual finding is fully supported by the record in the present action, and it rendered the Code § 18.2-57(G)(i) exception inapplicable.

## III. CONCLUSION

For the reasons stated, we will reverse the judgment of the Court of Appeals and reinstate the trial court's order of conviction.

*Reversed and final judgment.*

11