PRESENT: All the Justices

KIMBERLEE DIETZ

v. Record No. 160857

COMMONWEALTH OF VIRGINIA

OPINION BY
ELIZABETH A. McCLANAHAN
September 7, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

The circuit court found Kimberlee Dietz, an elementary school teacher, guilty under Code

§ 18.2-374.3(B) [1] of the crime of using a cell phone for "purposes of procuring or promoting"

one of her 11-year-old students for activity that would violate Code § 18.2-370 (taking indecent

liberties with children).[2] Upholding the conviction, the Court of Appeals of Virginia rejected

Dietz's argument that the Commonwealth's evidence was insufficient to prove she committed

the offense. We affirm the judgment of the Court of Appeals.

I. BACKGROUND

Dietz and the Commonwealth stipulated to the following evidence at the beginning of her

bench trial on the charge of violating Code § 18.2-374.3(B). Dietz was a teacher at an

elementary school in the City of Hampton and the victim, G.S., an 11-year-old boy, was one of

her students. G.S. gave Dietz the number to his cell phone at Dietz's request, claiming that

---

[1] Code § 18.2-374.3(B) provides, in pertinent part: "It is unlawful for any person to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity in violation of § 18.2-370 . . . ."

[2] While Code § 18.2-374.3(B) also proscribes the use of an electronic device for the purpose of procuring or promoting a minor in activity that would violate Code § 18.2-374.1 (child pornography), as also set forth in Dietz's indictment, the Commonwealth conceded at trial that there was no evidence of such purpose in this case.

another student wanted it.  Dietz then began texting messages to G.S., stating among other things that he was "cute" and she wished he was 18 years old so they could "be together."  None of those text messages to G.S. that had been saved on his phone at that time were "lascivious" in nature.  However, G.S. deleted other text messages from Dietz at her request.  G.S.'s parents subsequently discovered that Dietz and G.S. were texting each other during one such exchange of messages and contacted the City of Hampton Police Department ("CHPD").  G.S.'s cell phone was then turned over to Detective Randy Mayer.  In light of these stipulations, the Commonwealth did not deem it necessary to call either G.S. or his parents as witnesses to testify at Dietz's trial.

The remainder of the Commonwealth's case was presented through the testimony of Detective Mayer and Karyn Buhrman, a CHPD forensic specialist.  As they explained, while posing as G.S., Mayer, with Buhrman's assistance, texted Dietz on G.S.'s cell phone in continuation of the text messaging between Dietz and G.S. earlier that day.  During this exchange, Dietz sent five pictures from her phone to G.S.'s phone, believing she was sending them to G.S.  Four of the pictures were of Dietz's legs, face, lips, and a portion of her breasts, while she was lying in a bathtub.  The Commonwealth introduced these pictures at trial through Mayer and Buhrman, along with a five-page transcript of their text-message conversation with Dietz.  Believing she was texting G.S., Dietz made the following series of statements as reported in the transcript:

- "[N]o one is as cute as you!!!!"

- When told she was "hot," Dietz said: "it makes me feel like I'm on one of those cop shows when they catch teachers texting with students[.]"

- "[T]ak[ing] a picture of myself in a bubble bath . . . is soooo inappropriate! . . .  It's illegal—if it wasn't this would be sooo different but it is!"

2

- "I like you a lot but I shouldn't."

- "You're so smart and funny and cute and in a few years you are gonna be so sexy and girls will be all over you!"

- "What do you want [G.S.]? You want me? I like you too but . . . as far as any one in the world is concerned I can't do anything with you—I can't even kiss you. I'd be a pervert and lose my job! You need to be with girls your age. Prove me wrong though PLEASE!! Come knocking on my door in 6 more years when you turn 18 and I'll do whatever you want! I could probably lose my job for saying that but I'm serious!"

- "You are so sweet to me and give me attention that my husband didn't even give me."

- "[A]s much as you might think you want to do something with me it would make me a bad person."

- After sending the picture of her legs in the bathtub, Dietz said: "The guy I went on a date with liked my legs. He said they were long and sexy! . . . What do you wanna see[?] I could go to jail for this and yet I don't stop."

- When asked to show her "boobs," she proclaimed: "I have to leave something to your imagination don't [I]?" Then after purportedly asking G.S. if he had "ever seen a woman's boobs before" and being told "on tv," she stated: "Okay I'm gonna send one and if you don't delete it immediately you could get me in serious trouble so if you don't want that you have to delete it. Please promise!" She then said, upon sending the picture of her breasts, "Okay. Seriously the last picture and now I'm gonna drown myself."

- After sending the picture of her lips, she explained: "That's a kiss for deleting the pics.! I didn't want to give you a nipple shot . . . then you would have seen it all!!!! And I'd be boring old news! I can't believe I sent those though . . . drowning in the tub! If I get fired and go to jail you have to come visit me!!."

- "I'm gonna say something inappropriate but I've been so inappropriate already tonight here goes. I want to kiss you."

- "Did you save my number in your phone? You should save it as Kim . . . less obvious."

- "Well I'll send you a pic any time you wanna see me!"

- "So this guy wants me to come over . . . he just texted me that he wants to have sex. Is it weird that I'd rather stay here talking to y[ou][?]"

- When told G.S. had never kissed a girl, but wants to, Dietz said: "Okay well I am a great kisser . . . maybe you can find out one day. Ok so if I could just close off the rest of the world, I'd kiss you. But when and where would I possibly do that?" Upon receiving the response, "my house," she stated: "Oh yeah I'm sure your mom would let that happen!

3

You just have no idea what kinds of things I'd do to you if you were 18." When told G.S's mother would not be home until 5 o'clock, she responded: "Can't even begin to tell you. So many dirty things."

This exchange came to a close when Dietz was told that G.S.'s cell phone was "dying," to which Dietz concluded: "Goodnight. Text me tomorrow if you want."

As Detective Mayer further testified, that same day, he executed a search warrant of Dietz's home, where he confronted her and explained that he had actually been the one text messaging with her for the last several hours. Dietz began crying and admitted to Mayer that she thought she had been communicating with G.S., even though she suspected something was wrong because G.S. had "never talked to [her] like that before." Acknowledging that the communications were inappropriate, she explained that her husband had moved out and she liked the attention she received from G.S.

Dietz presented no evidence in her own defense, but moved to strike the Commonwealth's evidence on sufficiency grounds. She argued that use of the words "procure" and "promote" in Code § 18.2-374.3(B) involve communicating through some communications system, as defined in the statute, with a third party in an attempt to obtain a child or promote a child for the prohibited enumerated sexual offenses under Code § 18.2-370, and no such evidence was offered by the Commonwealth. Alternatively, Dietz argued that absent such interpretation of Code § 18.2-374.3(B) requiring a third-party communication, the evidence was still insufficient to prove a violation of this provision. She argued in particular that the Commonwealth failed to prove its case because none of the pictures she sent to G.S.'s cell phone depicted the exposure of "her sexual or genital parts" as specifically proscribed under Code §

4

18.2-370(A)(1).[3] With regard to the picture of her partially exposed breasts, in which her nipples were covered by her arm, she argued that the picture was not proscribed under subsection (A)(1) because it did not constitute nudity as defined in Code § 18.2-390 (defining "nudity" to mean, in relevant part, "showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple"). She also argued there was no evidence of lascivious intent as required under Code § 18.2-370(A)(1). The circuit court denied Dietz's motion to strike and found her guilty of violating Code § 18.2-374.3(B) "based on all of the evidence."

Dietz appealed her conviction to the Court of Appeals, arguing, as she did at trial, that the Commonwealth's evidence was insufficient to prove she committed the offense. The Court of Appeals affirmed her conviction in an unpublished opinion. *Dietz v. Commonwealth*, Record No. 0861-15-1, 2016 Va. App. LEXIS 146, at *16 (May 3, 2016) (unpublished). First, the Court of Appeals rejected Dietz's contention that the trial court erred in refusing (i) to hold that a conviction under Code § 18.2-374.3(B) requires a defendant to use an electronic device to communicate with a third person, not the minor himself, in the form of a solicitation to procure or promote illegal activity under Code § 18.2-370, and (ii) to then find that the Commonwealth offered no such evidence. *Id*. at *7-9. The Court of Appeals held that the plain language of Code § 18.2-374.3(B) "contains no requirement that the person with whom the defendant

---

[3] Code § 18.2-370(A)(1), in addressing the taking of indecent liberties with children, provides in relevant part as follows:

> A. Any person 18 years of age or over, who, with lascivious intent, knowingly and intentionally commits any of the following acts with any child under the age of 15 years is guilty of a Class 5 felony:
> (1) Expose his or her sexual or genital parts to any child to whom such person is not legally married or propose that any such child expose his or her sexual or genital parts to such person . . . .

5

communicates be someone other than the minor he or she seeks to involve in the illegal activity." *Id*. at *8.[4]

Second, the Court of Appeals rejected Dietz's argument that the evidence against her was insufficient on the grounds that no purported predicate violation of Code § 18.2-370(A)(1) occurred because the picture of her partially covered breasts did not constitute exposure of a "sexual part." *Id*. at *9. The Court of Appeals determined that "[t]he only reasonable conclusion to be drawn from appellant's course of conduct [is] that she was attempting to entice sexually an eleven-year-old boy when she sent the photograph of her breasts. The trial court did not err in finding that appellant acted with lascivious intent and that she exposed a sexual part to a child as prohibited by Code § 18.2-370." *Id*. at *15. The Court of Appeals thus agreed with the Commonwealth that it had proved that Dietz violated Code § 18.2-370 in establishing her guilt under Code § 18.2-374.3(B). For that reason, the Court of Appeals explained, "we need not consider the Commonwealth's alternative argument that it was required to prove only that appellant intended to violate Code § 18.2-370, not that an actual violation of that statute occurred." *Id*. at *15-16 n. 6. Dietz now appeals to this Court, challenging both rulings.

## II. ANALYSIS

### A. Standard of Review

A judgment of conviction on appeal is "presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Commonwealth v. Moseley*, 293 Va. 455, 463, 799 S.E.2d 683, 686-87 (2017) (quoting Code § 8.01-680; *Viney v. Commonwealth*, 269

---

[4] The Court of Appeals noted Dietz's acknowledgment at oral argument, and we agree, "that for purposes of a conviction under Code § 18.2-374.3(B) it is irrelevant whether the defendant was using the electronic device to communicate with an actual minor or merely a person posing as a child." *Dietz*, 2016 Va. App. LEXIS 146, at *2-3 n.2 (citing *Hix v. Commonwealth*, 270 Va. 335, 345, 619 S.E.2d 80, 86 (2005)).

6

Va. 296, 299, 609 S.E.2d 26, 28 (2005)). As to issues of law, we apply a de novo standard of review. The dispute over the proper interpretation of Code § 18.2-374.3(B) presents such an issue. *Hilton v. Commonwealth*, 293 Va. 293, 299, 797 S.E.2d 781, 784 (2017); *Grimes v. Commonwealth*, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014). Where the sufficiency of the evidence is challenged, however, "we review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 492, 496, 777 S.E.2d 851, 854 (2015). In such cases, this Court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Williams v. Commonwealth*, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)) (internal quotation marks omitted). "Rather, the relevant question is," upon review of the evidence in the light most favorable to the prosecution, "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted) (emphasis in original); *see Commonwealth v. Lambert*, 292 Va. 748, 757, 793 S.E.2d 805, 809 (2016) (same); *Vasquez v. Commonwealth*, 291 Va. 232, 248, 781 S.E.2d 920, 929 (2016) (same). Furthermore, "[t]hese principles apply with equal force to bench trials no differently than to jury trials." *Moseley*, 293 Va. at 463, 799 S.E.2d at 687 (quoting *Vasquez*, 291 Va. at 249, 781 S.E.2d at 930) (internal quotation marks omitted).

B. Whether a Third-Party Communication was Required

We begin with Dietz's contention that a violation of Code § 18.2-374.3(B) required that she engage in a third-party communication, i.e., a communication with someone other than G.S. (or whom she thought was G.S.), and the Commonwealth presented no such evidence.

When construing statutes, courts "must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Johnson v. Commonwealth*, 292 Va. 738, 742, 793 S.E.2d 321, 323 (2016) (citing *Rives v. Commonwealth*, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012). Thus, we are "required to apply the plain meaning of statutes," *Kim v. Commonwealth*, 797 S.E.2d 766, 772-773 (2017) (quoting *Signal Corp. v. Keane Fed. Sys.*, 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)), and are not free to "add language to [a] statute [that] the General Assembly has not seen fit to include." *Johnson*, 292 Va. at 743-744, 793 S.E.2d at 324 (quoting *Commonwealth v. Amos*, 287 Va. 301, 307, 754 S.E.2d 304, 307 (2014)).

In plain language, Code § 18.2-374.3(B) provides that it is a crime to use an electronic device, such as a cell phone, for "purposes of procuring or promoting the use of a minor for any activity in violation of § 18.2-370." There is simply no stated requirement in this provision that the defendant communicate with someone other than the minor with whom the defendant is seeking to involve in illegal activity. Nor is a third-party communication necessarily implied from the operative words—"purpose," "procure" and "promote"—Dietz's contention to the contrary notwithstanding. Because these words are not defined in the statute, we give them their "ordinary and plain meaning." *Hilton*, 293 Va. at 299, 797 S.E.2d at 785 (quoting *Grimes*, 288 Va. at 318, 764 S.E.2d at 264). "Purpose" is defined as "something that one sets before himself as an object to be attained," or "an end or aim to be kept in view." Webster's Third New International Dictionary 1847 (1993). The definition of "procure" includes "to bring about by scheming and plotting," and "to prevail upon to do something indicated: INDUCE." *Id*. at 1809. "Promote" is defined as "to move forward." *Id*. at 1815. Accordingly, a perpetrator could clearly violate Code § 18.2-374.3(B) by directly communicating with a minor, with the objective of

8

scheming or plotting to induce the minor to be the victim of an activity proscribed under Code § 18.2-370 (an activity that would constitute taking indecent liberties with a child), whether presently or in the future. The Court of Appeals thus correctly held that no third-party communication is required for a violation of Code § 18.2-374.3(B).

C. Whether a Violation of Code § 18.2-370 was Required

The Court of Appeals also held as a basis for affirming Dietz's conviction that the Commonwealth, in the process of establishing her violation of Code § 18.2-374.3(B), proved that she violated Code § 18.2-370(A)(1) by sending the picture of her breasts. In doing so, the Court of Appeals rejected her argument that the picture did not constitute the requisite depiction of a "sexual part" under Code § 18.2-370(A)(1) because her breasts were partially covered. Having reached that conclusion on Code § 18.2-370(A)(1), the Court of Appeals chose not to consider the Commonwealth's alternative argument (i) that it was not required to prove such a violation under Code § 18.2-370 of taking indecent liberties with a child in prosecuting Dietz under Code § 18.2-374.3(B) for an unlawful communication involving a child; and (ii) that there was sufficient evidence to support Dietz's conviction under Code § 18.2-374.3(B) without determining whether she actually violated Code § 18.2-370 by sending the picture of her breasts. Agreeing with the merits of this alternative argument by the Commonwealth, we will uphold Dietz's conviction on these narrower legal and factual grounds. *See Commonwealth v. White*, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015))).

This assessment of the case is dictated by a plain reading of Code § 18.2-374.3(B). The provision contemplates a *communication* by the perpetrator with a child (though it does not

9

require it), as explained in Part II.B., *supra*, with the *purpose* of procuring or promoting the child

in an act proscribed under Code § 18.2-370.  Therefore, under Code § 18.2-374.3(B), the

communication establishes the *actus reus* component of the crime and the purpose of the

communication establishes the *mens rea* component, both of which must be proved to establish a

violation of this subsection.  *See Burton v. Commonwealth*, 281 Va. 622, 626-27 708 S.E.2d 892,

894 (2011) ("[W]hen a statute makes an offense consist of an act combined with a particular

intent, proof of such intent is as necessary as proof of the act itself and must be established as a

matter of fact.  *Intent is the purpose formed in a person's mind . . . .*") (citations and internal

quotation marks omitted; emphasis added).

As to the "purpose" component of Code § 18.2-374.3(B), it may be established by

showing that the defendant was procuring or promoting the use of the child with the intent of

involving the child in either a then present act *or* a future act constituting the taking of indecent

liberties with children under Code § 18.2-370.  To construe Code § 18.2-374.3(B) otherwise, i.e.,

to require proof of a violation of Code § 18.2-370 in order to establish a violation of Code §

18.2-374.3(B), would require ignoring the full scope of the operative words, "purpose,"

"procure" and "promote," as defined above, which we will not do.  As we recently reiterated in

*Hilton*, "[a] defendant is not entitled to a favorable result based upon an unreasonably restrictive

interpretation of [a] statute."  293 Va. at 300, 797 S.E.2d at 785 (quoting *Grimes*, 288 Va. at 318,

764 S.E.2d at 264).  This construction of Code § 18.2-374.3(B) is also consistent with the

General Assembly's clear intent, when enacting this statute, "to protect children from people

who would take advantage of them *before* the perpetrator could commit a sexual assault on an

actual child."  *Dietz*, 2016 Va. App. LEXIS 146, at *8 (quoting *Grafmuller v. Commonwealth*, 57

Va. App. 58, 65, 698 S.E.2d 276, 280 (2010)) (emphasis in original).  Consequently, as relevant

10

here, we conclude that a defendant need not have actually committed a crime under Code § 18.2-370 of taking indecent liberties with a child to have committed a crime under Code § 18.2-374.3(B) of engaging in improper communications involving a child. To establish the latter offense, it is sufficient to show that the defendant's communication was for the purpose of moving forward with a scheme of taking indecent liberties with a child.

Here, there was more than sufficient evidence of Dietz's unlawful purpose under Code § 18.2-374.3(B) based on the undisputed evidence of her lascivious intent toward G.S., the *mens rea* component of Code § 18.2-370. We have defined "lascivious" for purposes of this statute as "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Viney*, 269 Va. at 299, 609 S.E.2d at 28 (quoting *McKeon v. Commonwealth*, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970)). The Commonwealth established Dietz's lascivious intent through the text messages and pictures that she sent to Detective Mayer while believing the communication was with G.S.—regardless of whether the particular picture of Dietz's breasts constituted a "sexual part" under Code § 18.2-370(A)(1).[5] In *Viney*, we

---

[5] Regarding the evidence of lascivious intent, the Court of Appeals stated that "although the parties stipulated that the text of the messages 'did not rise to the level' necessary to establish lascivious intent, the text of the messages does provide background and context for the photographic images" that Dietz sent to G.S.'s cell phone. *Dietz*, 2016 Va. App. LEXIS 146, at *15. While we agree that the messages did indeed provide "background and context" for those pictures, we do not agree that the parties' stipulation covered the text messaging between Dietz and Detective Mayer, which explicitly revealed Dietz's lascivious intent toward G.S. Our construction of the stipulation presents an issue of law subject to de novo review. *See Christy v. Mercury Cas. Co.*, 283 Va. 542, 546, 722 S.E.2d 256, 258 (2012) (applying a de novo standard of review in a case decided by circuit court on stipulation of facts and written contract); *Brizzolara v. Sherwood Mem'l Park, Inc.*, 274 Va. 164, 180, 645 S.E.2d 508, 515 (2007) ("Where the judgment of the trial court is based upon its interpretation of written documents, we review the issue de novo because '[w]e have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.'" (quoting *PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358, 626 S.E.2d 369, 372 (2006)); s*ee also P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1374 (Fed. Cir. 2003) ("The interpretation of the parties' stipulation, like any contract, is a question of law which we review de novo." (citing *Kearns v. Chrysler*

11

identified various kinds of evidence that may prove lascivious intent, including "improper remarks" made to the child by the defendant, and requests made to the child by the defendant "to do something wrong." 269 Va. at 300, 609 S.E.2d at 28.

Dietz's subject communication directed to G.S. was improper throughout the exchange of messages, revealing explicitly that G.S., an 11-year-old boy, was the object of her "sexual desire and appetite." *Id*. at 299, 609 S.E.2d at 28. With such state of mind clearly established from the undisputed evidence, we conclude that a rational factfinder could have determined beyond a reasonable doubt that, in violation of Code § 18.2-374.3(B), the purpose of Dietz's communication was to move forward with a scheme of taking indecent liberties with G.S. as proscribed under Code § 18.2-370, though such crime under Code § 18.2-370 may not have yet been completed. More specifically, the factfinder could have reasonably found that Dietz's scheme included exposing her sexual parts to G.S. in violation of Code § 18.2-370(A)(1), even if she did not complete the exposure at that time. The factfinder could also have reasonably found that Dietz's scheme included conduct that would violate Code § 18.2-370(A)(5), consisting of the following: while possessing lascivious intent, "[e]ntice, allure, persuade, or invite [a] child [under 15 years old] to enter any vehicle, room, house, or other place, for any of the purposes set forth in the preceding subdivisions of this subsection [addressing various illegal sexual conduct involving a minor]." Significantly, near the end of the subject exchange of messages, Dietz specifically inquired as to where she could be alone with G.S. in order that she could "kiss" him

---

*Corp*., 32 F.3d 1541, 1545 (Fed. Cir. 1994) (conducting a de novo review of "parties' pretrial stipulation, like any contract"))). It is apparent to us that the stipulation, when read in its proper context, was in reference only to the text messaging that had actually occurred between Dietz and G.S., before his cell phone was turned over to the police. The chronology of events covered in the stipulation simply stopped at that point. So while the stipulation avoided the need for either G.S. or his parents to testify, it did not address the substance of any of the events that transpired after the police received G.S.'s cell phone.

(after stating at the beginning of the communication that she could not kiss him because it would make her a "pervert" and she would "lose [her] job").  When G.S.'s house was suggested, Dietz's only stated reservation was that G.S.'s mother "would not let that happen."  But if they were alone, Dietz continued, she would do "[s]o many dirty things" with G.S., clearly implying unlawful conduct of a sexual nature.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals upholding Dietz's conviction under Code § 18.2-374.3(B).

*Affirmed*.