COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Lorish and Frucci
Argued at Norfolk, Virginia


ASHLEY SHAKIA LEWIS

                                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1512-24-1                                      JUDGE RICHARD Y. ATLEE, JR.
                                                                         SEPTEMBER 30, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Sabina B. Thaler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Ashley Shakia Lewis of malicious wounding,

use of a firearm in the commission of malicious wounding, and discharging a firearm in public

causing bodily injury.[1]  On appeal, Lewis argues that the trial court should have granted a mistrial to

remedy a *Batson*[2] violation.  She also challenges the sufficiency of the evidence to sustain her

convictions for malicious wounding and use of a firearm in the commission of malicious wounding.

Finding no error, we affirm the trial court's judgment.

I. BACKGROUND

"On appeal, we recite the facts 'in the "light most favorable" to the Commonwealth, the

prevailing party in the trial court.'"  *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Lewis pleaded guilty to a felon in possession charge in a bifurcated proceeding.

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

banc) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On July 1, 2023, Racquel Smythe spent the day celebrating her friend Bencia Wood's birthday.  Sometime that evening, Smythe and Wood met up with Tatiana.[3]  In the early morning hours of July 2, Smythe and Wood took Tatiana home, but when they arrived, Tatiana realized she did not have her house key.  Tatiana called Lewis, who was her girlfriend at the time.

Smythe and Wood then drove Tatiana to Lewis's apartment where Tatiana's car was parked.  On the drive over, Tatiana and Lewis were arguing over the phone.  When they arrived at the apartment complex, Lewis was standing on the sidewalk.  Tatiana immediately "jumped out of the car" and slammed Lewis to the ground, initiating a "fistfight."  Smythe broke up the fight and pulled Lewis off to the side.  Despite Smythe's attempts to defuse the situation though, the conversation between her and Lewis soon became heated.  Eventually, Lewis got in her car and drove off.  But she returned "like a minute later" driving at "full speed."  Lewis exited her car, said, "I'm going to kill you, bitch," and shot Smythe in the stomach.

On the morning of Lewis's trial, a panel of thirty-four prospective jurors was present.  Following voir dire, the trial court struck nine members of the venire for cause.  Both Lewis and the Commonwealth were given six peremptory strikes.  After each side made their peremptory strikes, the trial court called the jurors picked for the panel, and it swore in the jury.

---

[3] Tatiana's name appears variously in the record as "Tatiana" or "Tattayana Traynham."

Before dismissing the venire, however, the trial court stated that it needed to confer with counsel. It instructed all the jurors, except those struck for cause, to remain in the building and "await further instruction." The trial court asked all the witnesses and jurors to exit the courtroom.

Lewis then made a *Batson* motion, arguing that the Commonwealth's peremptory strikes indicated a discriminatory motive because "five of the six people struck were people of color." The trial court asked the Commonwealth to state race-neutral reasons for the strikes. After the Commonwealth provided its reasons, the trial court found that only three of the Commonwealth's six strikes were for race-neutral reasons. It sustained the *Batson* challenge, and it ordered that the three jurors whom the Commonwealth improperly struck be returned to the venire. It then allowed the Commonwealth three additional strikes. Lewis questioned the propriety of the trial court's remedy, noting that the jury had already been sworn, and she moved for a mistrial. The trial court denied the motion, and the trial proceeded. The jury returned guilty verdicts on all charges. Lewis now appeals.

## II. ANALYSIS

### A. *Batson* Challenge

Lewis challenges the trial court's remedy after sustaining her *Batson* challenge. She argues that the only permissible remedy was to declare a mistrial and impanel a new jury. We disagree.

A *Batson* challenge targets "*purposeful* discrimination in selection of the petit jury." *Bethea v. Commonwealth*, 297 Va. 730, 748 (2019) (quoting *Flowers v. Mississippi*, 588 U.S. 284, 298 (2019)). "The choice of remedy upon sustaining a *Batson* challenge lies within the discretion of the trial court." *Lewis v. Commonwealth*, 25 Va. App. 745, 750-51 (1997). We review a trial court's corrective measures concerning *Batson* violations for an abuse of discretion. *Id.* at 752; *Coleman v. Hogan*, 254 Va. 64, 67 (1997). "Only when reasonable jurists could not differ can we say an

abuse of discretion has occurred." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

After sustaining a *Batson* challenge, a trial court must enforce the equal protection rights of the appellant while simultaneously ensuring the proper administration of justice. *See Batson v. Kentucky*, 476 U.S. 79, 84-85, 98-99 (1986). The court must also honor and protect the rights of the individual jurors to participate on the jury. *Powers v. Ohio*, 499 U.S. 400, 409 (1991); *Batson*, 476 U.S. at 87. "The remedy provided by the trial court must cure th[e] taint" to "the jury selection process relative to that juror" who has been unconstitutionally stricken. *Coleman*, 254 Va. at 69. Because "[t]he trial court is uniquely positioned to evaluate the circumstances in each case," Virginia leaves it to the trial court's discretion to "select[] the appropriate remedy." *Id.* at 68. Those remedies may include "reseating persons improperly struck from the jury panel" or "discharging the venire and selecting a new jury from a new panel." *Id.* at 67; *see also Batson*, 476 U.S. at 99 n.24.

Relying on *Lewis v. Commonwealth*, Lewis argues that after the jury is sworn, the trial court's discretion is "cabined" and "the only appropriate remedy [is] aborting the trial." But Lewis misapplies *Lewis*. In that case, the defendant made a *Batson* motion after the trial court had already discharged the venire. *Lewis*, 25 Va. App. at 747. The trial court refused to consider the defendant's motion on the ground that it was untimely. *Id.* We affirmed, explaining that, at the time the defendant "attempted to challenge the Commonwealth's strikes of certain venirepersons, the court had discharged from service those very individuals," such that "no redress of the discrimination endured by the jurors wrongfully excluded from serving could be achieved." *Id.* at 751. "A trial court's exercise of discretion may be improperly cabined . . . if the challenge is made after the jury is sworn *and the remaining venirepersons are discharged*." *Id.* (emphasis added). "At that point, the court cannot reseat a juror improperly stricken, and discharging the venire and

beginning the process of jury selection anew may be compelled *under the circumstances*." *Id.* (emphasis added).

But that is not the case here. Lewis made her *Batson* challenge *before* the trial court discharged the venire. Thus, the trial court's discretion was not "improperly cabined," and it was possible for the trial court to reseat the jurors. This choice of remedy achieved an appropriate balance between Lewis's rights, the rights of the jurors, and the efficient administration of justice, which is exactly what we want our trial courts to do. Lewis's position would "improperly cabin" a trial court's discretion to remedy *Batson* challenges that the trial court still has the practical ability to remedy. The trial court reasonably exercised its discretion in reseating the improperly stricken jurors and denying Lewis's motion for mistrial.

B. Sufficiency of the Evidence

Lewis challenges the sufficiency of the evidence to sustain her convictions for malicious wounding and use of a firearm in the commission of malicious wounding. She argues that there was insufficient evidence to establish that she acted with malice. We disagree.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The only relevant question for this Court on review is, "upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)).

A person is guilty of malicious wounding if they "maliciously shoot . . . any person . . . caus[ing] [them] bodily injury, with the intent to maim, disfigure, disable, or kill." Code

§ 18.2-51. Under Code § 18.2-53.1, "[i]t shall be unlawful for any person to use . . . any . . . firearm . . . while committing . . . malicious wounding as defined in § 18.2-51." Thus, for both convictions, the Commonwealth was required to establish that Lewis acted with malice. *See Jay v. Commonwealth*, 275 Va. 510, 527 (2008) ("[T]here can be no conviction for use . . . of a firearm when there has been no commission of one of the predicate offenses enumerated in [Code § 18.2-53.1].").

Malice "may be directly evidenced by words[] or inferred from acts and conduct which necessarily result in injury." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)). Furthermore, "malice may be implied from the deliberate use of a deadly weapon." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)). "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000).

When Smythe, Wood, and Tatiana arrived at the apartment complex, Tatiana and Lewis immediately engaged in a fist fight. Smythe's efforts to break up the fight then turned Lewis's attention toward her. Lewis briefly left the scene and could have remained apart from the situation. But she instead chose to return, tell Smythe, "I'm going to kill you, bitch," and shoot her. Lewis's stated intention, her decision to return to the scene seemingly for the sole purpose of shooting Smythe, and her deliberate use of a deadly weapon permits a reasonable factfinder to conclude that Lewis acted with malice.

Lewis responds that Tatiana was the aggressor, that she was provoked, and that there was not a cooling down period between her driving away and returning to the parking lot. She also argues that she was "violently set upon by all three women." But the evidence does not support Lewis's argument. The evidence established that Smythe only tried to break up the fight. "[W]here it is not the victim of the crime who invoked the defendant's heat of passion, heat of

- 6 -

passion is not established." *Williams v. Commonwealth*, 64 Va. App. 240, 252 (2015). Rather, "[m]alice is implied by law from any deliberate, willful, and cruel act against another, *however sudden*." *Id.* at 249 (emphasis added) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)). In addition, the fight was over, and Lewis was able to get in her car and drive away.

The jury was free to reject the defense's justification argument[4] and accept the testimony of the Commonwealth's witnesses. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused . . . ."); *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) ("Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). Accordingly, we hold that the evidence was sufficient to establish that Lewis acted with malice.

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[4] At trial, the police interview of Lewis was entered into evidence in which Lewis contended that she did not drive away and that the three women attacked her. On closing, defense counsel urged the jury to consider their claim of self-defense.