COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, White and Senior Judge Annunziata
Argued at Fairfax, Virginia

ZIM MOHAMMAD

                                                  MEMORANDUM OPINION[*] BY
v.      Record No. 1775-24-4               JUDGE ROSEMARIE ANNUNZIATA
                                                       NOVEMBER 25, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Meghan Downey, Assistant Public Defender, for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.


The trial court convicted Zim Mohammad of using a computer to solicit a minor, in violation of Code § 18.2-374.3(B).[1] He was sentenced to five years' incarceration, all suspended. On appeal, Mohammad challenges the sufficiency of the evidence to sustain his conviction. Finding no error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] By order dated October 24, 2023, the Honorable David Bernhard granted an unopposed continuance of Mohammad's status hearing. Now a member of this Court, Judge Bernhard took no part in this decision.

UNPUBLISHED

BACKGROUND[2]

As part of an online sting operation, Fairfax County Police Detective Markley Grigg created an undercover persona of a 14-year-old female named "Steffy." Grigg setup a profile for Steffy on the online chat platform "Telegram." Grigg uploaded an "age regressed"[3] photo of another detective onto the profile indicating that Steffy was 14 years old.

On Wednesday, December 14, 2022, Mohammad began interacting with Steffy's profile on Telegram. Grigg received the messages and responded, pretending to be Steffy. Mohammad said that he was 24 years old. Steffy replied that she was 14 years old. Mohammad asked if she would like to meet up on Saturday. Steffy said her mom would be home that day but would be gone all day during the week. Mohammad sent her his phone number, and they transitioned their correspondence to cell phone text messages.

The following day, Mohammad messaged Steffy saying that he wanted to take her shopping "just to make [her] happy." Steffy asked if he would buy her a new phone, to which Mohammad replied, "Anything to make you happy." Steffy replied, "I'm up for anything." Mohammad told her he wanted to "kiss, hug," and "touch [her] boobs." Mohammad would be off work the following Monday and asked if she would be home alone that morning. He reiterated his plans to buy her a new "iPhone 14" that day. Mohammad told her, "I want to touch your boobs" and "lick your boobs," and that he intended to "video this all" with her new iPhone.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[3] Computer software alters the photo of an individual to make the person appear significantly younger.

Mohammad continued interacting with Steffy through text messages for about a week. He persistently made plans to meet up with her. He asked her to send "selfie[s]" and solicited "sexy photos" of her "boobs." Mohammad asked if she was available to meet on Wednesday. Steffy agreed and told him he would have to wait to see her breasts that day.

On Wednesday, December 21, 2022, Mohammad took a bus to go meet Steffy at the address she had provided. She asked him to arrive at 10:30 a.m. because her "dad is leaving a little late today." Steffy indicated she was going to "get ready," "showered[,] and looking pretty" for Mohammad's arrival. Mohammad suggested that she wait and get ready after her dad left the house, so he would not "suspect" anything. Mohammad told her to "let [him] know" once her dad had left.

When Mohammad arrived at the bus stop of his destination and exited the bus, Grigg was waiting there. Grigg recognized him from a photo that Mohammad sent to "Steffy" earlier that week. Grigg arrested Mohammad, advised him of his *Miranda*[4] rights, and interviewed him.[5] Mohammad told Grigg that he had been "looking for a girlfriend." He intended to be in a "boyfriend, girlfriend" relationship with Steffy. Mohammad acknowledged that Steffy was 14 years old. He also stated his intent to "touch her boobs" and see her boobs, but had no intention to "force her" to do so. Mohammad confirmed that he was the person who interacted with Steffy's Telegram profile and then contacted her via text messages.

At trial, Grigg testified about the interactions he had with Mohammad through Steffy's persona. Transcripts of the correspondence between Mohammad and Steffy were entered into evidence. The interview Grigg conducted with Mohammad was published for the trial court. The trial court convicted Mohammad for using a computer to solicit a minor. This appeal followed.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] For purposes of the interview, Grigg told Mohammad that Steffy was a real person.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is unlawful for any person to use a communications system, including computers or computer networks or bulletin boards, or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity in violation of [Code] § 18.2-370." Code § 18.2-374.3(B). Mohammad argues that the evidence does not support a finding that he acted with "lascivious intent," the *mens rea* element of Code § 18.2-370. He also claims that the evidence failed to show that he proposed to feel or fondle a child's "sexual or genital parts" as

- 4 -

contemplated by Code § 18.2-370. In support of that argument, he insists that the term "sexual or genital parts," does not encompass female breasts. The record does not support this argument.

Code § 18.2-374.3(B) "contemplates a *communication* by the perpetrator with a child" as the *actus reus*, with "the *purpose* of procuring or promoting the child in an act proscribed under Code § 18.2-370" as the *mens rea*. *Dietz v. Commonwealth*, 294 Va. 123, 134 (2017). Thus, to obtain a conviction under Code § 18.2-374.3(B), "it is sufficient to show that the defendant's communication was for the purpose of moving forward with a scheme of taking indecent liberties with a child." *Id.* at 135. Under this framework, it is not necessary to prove that a defendant's communication explicitly implicates a "sexual part" as contemplated by Code § 18.2-370. *See id.* at 136. "[R]egardless of whether" the female breast constitutes a "sexual part" under Code § 18.2-370, sufficient evidence of a defendant's unlawful purpose as contemplated by Code § 18.2-374.3(B) may be "based on . . . undisputed evidence of [the defendant's] lascivious intent toward" a child. *Id.* at 135-36.

"Intent is a factual determination . . . accorded great deference on appeal and will not be reversed unless clearly erroneous." *Johnson v. Commonwealth*, 83 Va. App. 324, 338 (2025) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011)). Lascivious intent is "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Id.* (quoting *Dietz*, 294 Va. at 136). Lascivious intent may be established by evidence "that the defendant made improper remarks to the child" or "that the defendant asked the child to do something wrong." *Id.* at 338-39 (quoting *Viney v. Commonwealth*, 269 Va. 296, 300 (2005)). Proof of either of those circumstances alone "can be sufficient" to prove lascivious intent. *Id.* at 339 (quoting *Mason v. Commonwealth*, 49 Va. App. 39, 45 (2006)).

That Mohammad communicated with Steffy was undisputed. At the outset of their communications, Steffy learned that Mohammad was 24 years old. She disclosed to him that she

was 14 years old and asked Mohammad "if that's ok with" him. He was "fine" with that being the case and asked if her family would approve of her spending time with him. As the communications continued, Mohammad explicitly and repeatedly told Steffy that he wanted to "see," "touch," and "lick" her "boobs." He expressed his desire to "kiss" and "hug," and "more" if she wanted. He planned to "video this all" with a phone he intended to purchase for Steffy.

When Mohammad proposed that he and Steffy meet, they devised a plan to meet up at her home during times that would avoid her parent's detection. They eventually agreed to meet at her dad's apartment on a day that he would be at work. On that day, Mohammad took a two-hour bus ride to the location. Along the way, Steffy messaged Mohammad telling him she was going to "get showered and looking pretty" for his arrival. Mohammad expressed concern that if she were to "get ready" for his arrival, her father may "suspect" something. He told her to "get ready after your dad go[es] out." From these facts, a fact finder reasonably could infer that Mohammad knew he had "made improper remarks" to Steffy or had asked Steffy "to do something wrong." *Johnson*, 83 Va. App. at 339. Likewise, from these facts, the trial court reasonably could conclude that Mohammad had communicated with Steffy for "the purpose of moving forward with a scheme of taking indecent liberties with a child." *Dietz*, 294 Va. at 135.

Though *Dietz* determined that a conviction under Code § 18.2-374.3(B) does not require proof that a communication implicates a "sexual part" as understood by Code § 18.2-370, this Court has previously held that "non-reproductive" body parts may "be sexual if accompanied by the proper intent." *Moyer v. Commonwealth*, 33 Va. App. 8, 36 (2000) (en banc). "Therefore, because the evidence supports the trial court's finding that appellant acted with lascivious intent, it also supports the finding" that, in the context of this case, breasts were "sexual parts" within

the meaning of Code § 18.2-370.[6]  *Id.*  Therefore, we find that the evidence supports the trial court's judgment.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[6] We also note that "in Code § 18.2-67.10(2), which defines terms used in the article proscribing various types of criminal *sexual* assault, 'intimate parts' include not only the genitalia but also the 'anus, groin, breast or buttocks.'"  *Moyer*, 33 Va. App. at 36.  Similarly, provisions prohibiting the sale of certain items to minors defines "*sexual* conduct" as "actual or explicitly simulated acts of . . . physical contact in an act of apparent sexual stimulation or gratification with a person's clothed or unclothed genitals, pubic area, buttocks, or, *if such be female, breast*."  Code § 18.2-390 (emphasis added).  *See also Moyer*, 33 Va. App. at 36.