PRESENT:  All the Justices

CAMERON FRAZIER BOWMAN

v.  Record No. 141737

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE D. ARTHUR KELSEY
October 29, 2015

FROM THE COURT OF APPEALS OF VIRGINIA

The trial court convicted Cameron Frazier Bowman of construction fraud, in violation of

Code § 18.2-200.1.  On appeal, Bowman contends that the evidence was insufficient to prove

that he received a statutorily compliant letter demanding a return of a $2,100 advance he had

previously received from the homeowner.  We agree and reverse Bowman's conviction.

I.

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003).  Viewing the record through this evidentiary prism requires us to "discard

the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

Kelley v. Commonwealth, 289 Va. 463, 467-68, 771 S.E.2d 672, 674 (2015) (quoting Parks v.

Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).[1]

Viewed from this perspective, the record in this case shows that on or about April 30,

2012, a homeowner entered into a verbal agreement with Bowman for him to install a new

_____

[1] In addition, our appellate review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling."  Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).  Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record," id., and not limit itself to "merely the evidence that the reviewing court considers most trustworthy," Commonwealth v. Jenkins, 255 Va. 516, 522, 499 S.E.2d 263, 266 (1998).

replacement liner in the homeowner's swimming pool. They agreed to a total price of $4,200, with an initial advance of $2,100 and the remaining $2,100 due after installation work was completed. The homeowner gave Bowman a check dated May 1, 2012, representing the $2,100 advance. Bowman estimated that the work would be finished by May 18, 2012. The estimated completion date came and went without any work taking place. When the homeowner called to inquire about the status of the job, Bowman claimed that he had experienced some health problems, had been very busy with other jobs, and needed more time. The homeowner initially agreed to extend the estimated completion date, but he later contacted the police when he realized that no progress was being made.

At trial, the homeowner testified that the police advised him to send a "certified letter" to Bowman. J.A. at 15. The homeowner said that his wife had prepared a "form letter," id. at 15, 26, and that although he had read it, he could not remember what it said, id. at 27. The certified letter was returned undelivered. The original sealed envelope, still unopened, was introduced into evidence. See id. at 16-18. Inexplicably, neither the parties nor the trial court ever opened the envelope at any point during or after the trial. See, e.g., Oral Argument Audio at 4:04 to 4:15; 24:40 to 24:47 (affirmations by both parties that the envelope was never opened).

The homeowner sent a "second letter" by certified mail to a different address. J.A. at 16. Bowman received the second letter and signed the mailing receipt. A copy of the second letter, however, was not introduced into evidence. Both the homeowner and Bowman testified at trial, but neither said anything about the contents of the second letter. No other evidence in the record discloses any of the contents of this letter.

During this time frame, the homeowner spoke with Bowman by phone. Bowman said that he had purchased the pool liner but did not have the time to install it. The homeowner asked

2

Bowman to turn the new pool liner over to him so that the homeowner could hire another contractor to install it.[2] "I was just making an attempt to get my liner so I could get my pool fixed," the homeowner testified. Id. at 18. "That's it." Id. In a later phone conversation, Bowman told the homeowner that he had received the second "demand letter" and that he needed the homeowner to "sign some form" releasing him from liability in order "to get the liner without him finishing the entire project." Id. at 19. Nothing happened after this conversation. Bowman never gave the homeowner a release to sign, never delivered the new pool liner, never completed the installation, and never responded to the homeowner's inquires.

Bowman was indicted for construction fraud, a violation of Code § 18.2-200.1. At trial, no evidence demonstrated that the first letter was addressed to Bowman's last known address. See id. at 47-48. The parties argued extensively over the unknown content of the second letter, which Bowman had admittedly received. See id. at 19. During a colloquy over an evidentiary objection, the trial court stated: "I'm satisfied that [the homeowner] was trying to get his money back or get the job — he testified he was even willing to allow the defendant to just give him the liner and move on." Id. at 29.

While arguing a motion to strike, Bowman's counsel pointed out that "there is not enough evidence to determine what that particular letter contained — the second one." Id. at 48; see also id. 35-36. The trial court denied the motion to strike without specifically addressing the content of the second letter. Finding Bowman guilty, the court concluded: "This could have been all cleared up if [Bowman had] just returned the money or the liner and none of that was done." Id. at 55. Bowman filed a petition for appeal with the Court of Appeals, which denied

---

[2] Bowman later advised a police detective that he had never purchased the pool liner. J.A. at 32. At trial, he stated that he had used the homeowner's advance "for materials and for payroll. . . . just to keep the business rolling." Id. at 45-46.

3

the petition by a per curiam order. We granted Bowman a writ of error to determine whether his challenge to the demand letter had merit.

## II.

### A. STANDARD OF APPELLATE REVIEW

Interpreting the elements of a statutory crime involves a purely legal question that we review de novo. See Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 825 (2014). In contrast, we review factfinding with the highest degree of appellate deference. "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).[3] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (emphasis in original) (citation omitted).

### B. THE SPECIFIC "DEMAND" REQUIRED BY CODE § 18.2-200.1

On appeal, Bowman concedes that the evidence may have been sufficient to imply that the homeowner sent a demand letter of some sort to him. But Code § 18.2-200.1, Bowman argues, requires the demand letter to request specifically the "return" of the advance. At best, Bowman continues, the sparse evidence in this case permits only the inference that the homeowner's letter made alternative demands — either that Bowman deliver a new pool liner *or*

---

[3] See also Courtney v. Commonwealth, 281 Va. 363, 368, 706 S.E.2d 344, 347 (2011) ("As we have said on many occasions, 'If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" (alteration and citation omitted)); Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929) ("[I]t is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion."). This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).

4

return the cash advance — similar to the manner in which he had contemporaneously expressed his demands to Bowman via telephone.

We begin our consideration of Bowman's argument with an obvious, but sometimes overlooked, generality: The construction fraud statute, Code § 18.2-200.1, was not meant simply to criminalize a contractor's breach of contract. The statute instead criminalizes a species of fraud analogous to the crime of obtaining money under false pretenses. Cf. Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807-08 (1977) (setting forth the elements of larceny by false pretenses). The only analogue in civil law to construction fraud would be promissory fraud, which recognizes tort liability when a contracting party "makes a promise that, when made, he has no intention of performing." Station #2, LLC v. Lynch, 280 Va. 166, 172, 695 S.E.2d 537, 540 (2010).

Code § 18.2-200.1 uses highly specific language to protect against the risk of being interpreted as a means of criminalizing mere contractual defaults:

> If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction . . . , and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

Under this statute, fraudulent intent must exist at the time that the "defendant procured the advance." Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992).[4] The statute also requires a showing that the contractor failed or refused to "perform" the promised work and to "substantially make good such advance." Code § 18.2-200.1; see generally

---

[4] See generally 7 Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 282 (2014-2015 ed.); John L. Costello, Virginia Criminal Law and Procedure § 12.3[5], at 215 (4th ed. 2008).

5

Holsapple v. Commonwealth, 266 Va. 593, 601-04, 587 S.E.2d 561, 565-67 (2003).  Even after

these showings have been made, the statute requires additional proof that the contractor "fail[ed]

to return such advance within fifteen days of a request to do so."  Code § 18.2-200.1.[5]  This

"notice requirement," we have emphasized, is a "material element" of the statutory offense.

Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991).

     The textual simplicity of the statute's description of the required notice — "a request to

do so" — raises the question whether the request could include something different than an

unqualified demand to return all or part of the original advance.[6]  We think the answer must be

that it cannot.  The syntax of the statute relates the "request to do so" to the demand that the

contractor "return such advance."  Code § 18.2-200.1.  The statute does not say that the notice

can give the contractor other options — such as continued contractual performance at a reduced

price, the return of something other than the advance, or the delivery of materials in lieu of a

return of the advance.[7]  There are sound reasons for not overcomplicating the statute in such

manner.  If the contractor "fails to return such advance," he "shall be deemed guilty of the

---

[5] The request must be "sent by certified mail, return receipt requested, to [the contractor's] last known address or to the address listed in the contract," Code § 18.2-200.1, though it need not be actually received, Holsapple, 266 Va. at 599-600, 587 S.E.2d at 564-65; see also Bacigal, supra note 4, at 282 (noting that "[t]he Commonwealth is not required to prove that the defendant actually received the certified mail demand").  Bowman challenges the sufficiency of the evidence on this point as well.  Given our holding, however, we need not address this issue.

[6] See generally McCary v. Commonwealth, 42 Va. App. 119, 132, 590 S.E.2d 110, 117 (2003) (rejecting defendant's argument that the "homeowners did not comply with the statute because they requested the return of *all* monies paid" (emphasis in original)); see also Bacigal, supra note 4, at 283 (acknowledging the legal sufficiency of a demand "even if it demands a refund in excess of that which might actually be due") (citing McCary, 42 Va. App. at 132, 590 S.E.2d at 117 (2003)).

[7] Although the statute permits an advance to be "money, merchandise or other thing, of value," Code § 18.2-200.1, when money is given as the advance, the return of "such advance" necessarily means the money.  See Bacigal, supra note 4, at 282 (defining the "advance" in this context as "money paid before the work for which it is paid is completed").

larceny of such money" if the other requirements of the statute are also met.  Id.  The contractor, therefore, should not be misled into believing that anything other than a return of the advance would relieve him of the very real risk of criminal prosecution.

## C.  THE DEMAND LETTERS SENT TO BOWMAN

In this case, the homeowner testified that he could not remember what his wife's first demand letter actually said.  J.A. at 15, 26-27.  After it was returned undelivered, the homeowner sent another demand letter, which Bowman received.  Neither that letter nor any copy of it was introduced into evidence.  The prosecutor never asked the homeowner or Bowman what that letter specifically said, and no other evidence in the record provides any clues.

When asked what he was hoping to accomplish, the homeowner testified that he wanted Bowman to turn the pool liner over to him so that he could hire another contractor to install it.  "I was just making an attempt to get my liner so I could get my pool fixed," the homeowner testified.  Id. at 18.  "That's it."  Id.  During a colloquy over an evidentiary objection, the trial court stated its understanding of the homeowner's intent:  "I'm satisfied that [the homeowner] was trying to get his money back *or get the job* — he testified he was even willing to allow the defendant to just give him the liner and move on."  Id. at 29 (emphasis added).  Later, during the motion to strike argument, the court stated that Bowman should have "just returned the money or the liner and none of that was done."  Id. at 55.

If the statutory notice requirement could be satisfied by an alternative demand for *either* continued partial performance of the contract (by delivering the new pool liner) *or* a return of the advance (the $2,100 previously paid), we would agree with the Commonwealth that the evidence was more than sufficient to permit the inference that the homeowner's letter to Bowman complied with the statute.  It appears to us that the trial court, sitting as factfinder, drew just this

7

inference — which would be reasonable if Code § 18.2-200.1 could bear an interpretation allowing for a notice making alternative demands. We do not believe it can, however.

The trial court did not specifically find, nor do we think it likely that the court meant to find, that the evidence proved that the homeowner's demand letter asked only for a return of the advance. We do not fault the court for not providing specific factfinding on this issue.[8] But we must nonetheless close the loop on Bowman's argument by considering whether a rational factfinder could have inferred beyond a reasonable doubt that the homeowner's demand letter complied with the statutory requirement that it make an unqualified demand for the "return [of] such advance." Code § 18.2-200.1. We think not. The homeowner could not recall what the second letter actually said. A copy of the letter was not introduced as evidence. Although Bowman testified at trial, the prosecutor never asked him about the specific contents of the letter. And the only evidence of what the homeowner specifically wanted was his oral statements to Bowman asking him to deliver a new pool liner.

While a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Jackson, 443 U.S. at 319, the inferences cannot become so attenuated that they "push 'into the realm of *non sequitur*,'" Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted). On the narrow issue presented by this appeal — the specific demand made in the homeowner's second certified letter — the evidence had insufficient probative

_____

[8] Absent a statutory requirement to do so, "a trial court is not required to give findings of fact and conclusions of law." Fitzgerald v. Commonwealth, 223 Va. 615, 627, 292 S.E.2d 798, 805 (1982). Because an appellate court has a "duty to discard" contested evidence presented by the accused and to "regard as true" all credible evidence favorable to the prosecution, Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954), it necessarily follows that, when "faced with a record of historical facts that supports conflicting inferences," a court reviewing the sufficiency of the evidence "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution," Jackson, 443 U.S. at 326; see also Wright v. West, 505 U.S. 277, 296-97 (1992) (plurality opinion).

8

weight to permit a rational factfinder to infer beyond a reasonable doubt that the letter complied with Code § 18.2-200.1.

III.

Code § 18.2-200.1 requires proof that the certified letter to the contractor made an unqualified demand for the return of the advance. Because the evidence in this case failed to prove this element of the offense, we reverse Bowman's conviction.

Reversed and final judgment.