COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Russell and Athey
Argued by videoconference

**PUBLISHED**

JUAN LUIS LOPEZ

                                                    OPINION BY
v.        Record No. 0266-20-1          JUDGE CLIFFORD L. ATHEY, JR.
                                                    MARCH 2, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
James C. Hawkes, Judge

John I. Jones, IV (John Jones Law, PLC, on brief), for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Juan Luis Lopez ("Lopez") appeals his convictions in the Circuit Court of the City of

Chesapeake ("trial court") for escaping from the custody of a law enforcement officer by force in

violation of Code § 18.2-478, disarming a law enforcement officer of his impact weapon, a

baton, in violation of Code § 18.2-57.02, attempting to disarm a law enforcement officer of his

stun weapon in violation of Code §§ 18.2-57.02 and 18.2-26, and engaging in an assault and

battery on a law enforcement officer in violation of Code § 18.2-57.  Lopez contends that the

trial court erred when it convicted him of escaping from custody because "no evidence supported

a finding that Lopez was charged with a criminal offense at the point of his initial arrest."  Lopez

also argues that the evidence presented at trial was insufficient to prove that he disarmed Officer

Echevarria of his baton or attempted to disarm Echevarria of his stun weapon because he did not

possess the requisite intent to impede the officer in the performance of his official duties.

Finally, Lopez contends that the evidence presented at trial was insufficient to prove he assaulted

and battered Echevarria because the video footage of the encounter "foreclosed a finding that Lopez took any affirmative action resulting in an offensive touching."

BACKGROUND

On the evening of May 18, 2019, Chesapeake Police Officers Gabrielle Quindara ("Quindara") and Anthony Echevarria ("Echevarria") responded to a complaint of a loud party on Phalarope Street in the city. Upon arriving at the scene, the officers first came into contact with Lopez. While interacting with him, the officers wore their full uniforms and displayed their badges of authority. Quindara learned through a check of the VCIN and NCIC database[1] that Lopez was the subject of a capias for his arrest issued by the Chesapeake Juvenile and Domestic Relations District Court ("Chesapeake JDR"). The capias had been issued for Lopez "[i]n connection with" an assault and battery charge. The capias commanded any officer "in the name of the Commonwealth forthwith to arrest [Lopez]" and "produce [him] . . . to show cause, if any, why [he] should not, pursuant to [] Code § 18.2-456 . . . be imprisoned, fined, or otherwise punished for . . . failure to obey an order of this court [to] comply with CCA."[2]

After confirming Lopez's identity, Quindara advised Lopez that he was wanted on the capias and instructed him to "turn around and put [his] hands behind [his] back." In response, Lopez became "very disorderly" and demanded to see the capias. Quindara tried to "reason with" Lopez by reassuring him that he would see the capias as soon as they arrived at the jail. Lopez then began pulling away from the officers while stating, "I'm telling you right now, you ain't doing nothing. Don't do this to yourself."

---

[1] The Virginia Criminal Information Network ("VCIN") and the National Crime Information Center ("NCIC") provide rapid data communications to law enforcement.

[2] The trial court found that "CCA" is the Chesapeake Community Agency for supervision.

Echevarria advised Lopez that he was under arrest and attempted to secure Lopez's wrist several times. In response, Lopez "abruptly and in an aggressive manner pulled his arm back" while telling Echevarria, "don't touch me bro" and shoving Echevarria in the chest using both of his hands. Echevarria responded, "you're under arrest," to which Lopez replied, "I'm under arrest for what! What am I under arrest for!" Lopez then began running toward his house. Echevarria pursued him on foot before discharging his stun weapon into Lopez's back. Lopez continued running into his house, closed the door, and fell onto a sofa.

When Echevarria entered the house, Lopez rose from the sofa and lunged toward him, attempting to separate the officer from his stun weapon. Following a struggle, Echevarria was able to secure his stun weapon and return it to his holster. Echevarria then began backing away from Lopez, who responded by charging the officer. Lopez began shoving him in the body and face, and Echevarria deployed his department-issued pepper spray into Lopez's eyes. Lopez then lunged at the officer again, "violently, shoving [him] with . . . both of his hands, causing [the officer] to fall." Echevarria stood back up and attempted to arrest Lopez again, whereupon Lopez grabbed Echevarria's head and shoulder area in an effort to take him to the floor. At this point, Echevarria drew his baton and tried to strike Lopez in the knee to subdue him; however, Lopez blocked the baton strike and violently lunged toward Echevarria while shoving him toward the stairs, causing the officer to fall and drop his baton. Before Echevarria was able to regain a standing position, Lopez retrieved the baton and stood over him as he laid on the floor. The violent struggle only ended after Quindara arrived and was able to pull Lopez off of Echevarria.

Quindara testified at trial that she had been speaking with another guest at the party when she heard Echevarria struggling with Lopez. She went to assist Echevarria and managed to pull Lopez off of Echevarria. Both of the officers, working in tandem, were finally able to take

Lopez to the floor and effectuate the arrest. Quindara was forced to pry one of Lopez's hands from Echevarria's baton in order to place handcuffs on him. Lopez was treated at a hospital and then transported to jail, where he was served with the capias, which the Commonwealth introduced at trial to establish that he was charged with a "criminal offense" at the time of the encounter.

At the conclusion of the Commonwealth's case in chief, Lopez moved to strike as to the escape, disarming, and attempted disarming charges. He argued that all the elements of the escape statute had not been met because the capias was not a "criminal offense" within the meaning of Code § 18.2-478. With respect to the disarming and attempted disarming charges, Lopez argued that the evidence failed to show that he acted with the requisite intent to impede Echevarria in the performance of his duties. The trial court denied Lopez's motion to strike.

Lopez then testified in his own defense, denying much of the Commonwealth's evidence contained in the officers' body camera footage as well as the testimony of the officers. At the conclusion of all of the evidence, Lopez renewed his motion to strike as to the escape, disarming, and attempted disarming charges. Lopez also moved to strike the evidence as to the assault and battery of a law enforcement officer, arguing that the requisite unlawful touching was not satisfied. The trial court denied the renewed motions to strike, noting that if Lopez had "simply let [the officers] do their duties, all of this would not have happened" and that "[t]his was not an unlawful arrest." The trial court further noted that the officers "were advised that there was a warrant outstanding for [Lopez]," and although Lopez "may have been concerned that it was another Juan Lopez that they were looking for" and "didn't know about any warrants that had been issued for him . . . [the street is] not the place to resolve that."

The trial court convicted Lopez of all of the charges, holding that the elements of the escape statute, Code § 18.2-478, were satisfied because Lopez was arrested on a charge of

- 4 -

criminal offense when the outstanding capias was "for a failure to comply with court-ordered community corrections and supervision . . . [and] punishable by imprisonment if he's found to be in violation." With respect to Lopez's disarming Echevarria of the baton and his attempt to disarm Echevarria of his stun weapon, the trial court held that "without a doubt . . . [Lopez] was impeding the officer in the use of those weapons, in the officer's effort to make a lawful arrest . . . ." Finally, with respect to the charge of assault and battery of a law enforcement officer, the trial court reasoned that "though [Lopez] denies it, [] you can see it on the video where he pushes the officer before he bolts for the house . . . ."

The trial court sentenced Lopez to a total of seven years and twelve months' incarceration with six years and twelve months suspended. This appeal followed.

STANDARD OF REVIEW

With respect to issues arising from the trial court's interpretation of a statute, we apply a *de novo* standard of review. See Dietz v. Commonwealth, 294 Va. 123, 132 (2017). The dispute over whether a "charge of criminal offense" includes a capias alleging contempt presents such an issue because it requires this Court to interpret Code § 18.2-478. See id. Where an appellant challenges the sufficiency of the evidence, we "review factfinding with the highest degree of appellate deference." Bowman v. Commonwealth, 290 Va. 492, 496 (2015). In those cases, we need only determine, upon reviewing the evidence in the light most favorable to the prosecution, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 496-97 (quoting Williams v. Commonwealth, 278 Va. 190, 193 (2009)). "These principles apply with equal force to bench trials no differently than to jury trials." Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Vasquez v. Commonwealth, 291 Va. 232, 249 (2016)).

ANALYSIS

## I.  Code § 18.2-478 – "On a Charge of Criminal Offense"

In appealing his escape from custody conviction, Lopez assigns error to the trial court's finding that he was "charged with a criminal offense at the point of his initial arrest."  Lopez maintains that "[a] bench warrant alleging contempt is not a 'charge of criminal offense' within the intendment of Code § 18.2-478."  Rather, Lopez asserts that, after applying the rule of strict construction, a contempt warrant charging a violation of Code § 18.2-456 does not "clearly" fall within the language of the prohibition contained in Code § 18.2-478, "on a charge of criminal offense."

Because we are "bound by the plain meaning" of unambiguous statutory language, Alston v. Commonwealth, 274 Va. 759, 769 (2007) (quoting Lee County v. Town of St. Charles, 264 Va. 344, 348 (2002)), we first examine the actual language in the statute at issue.  Code § 18.2-478 provides, in pertinent part, that "if any person lawfully in the custody of any police officer on a charge of criminal offense escapes from such custody by force or violence, he shall be guilty of a Class 6 felony."  The statute does not define the phrase "on a charge of criminal offense," and whether contempt charged under Code § 18.2-456 falls within the statute's scope is a question of first impression.

We begin our analysis by noting that our Supreme Court defined this phrase in Hubbard v. Commonwealth, 276 Va. 292, 296 (2008), holding as follows:

> [T]he phrase, "on a charge of criminal offense," clearly contemplates a formal accusation upon which a trial court could act and pass judgment. . . .  [T]he evidence must show the defendant was taken into custody pursuant to a written charge; probable cause to arrest will not suffice to satisfy th[is] . . . element . . . .

Lopez contends that a charge of criminal contempt does not fall within this definition.  We disagree.

First, we note that, as even Lopez conceded at oral argument in this Court,[3] the capias was for a charge of *criminal*, as opposed to civil, contempt. The capias explicitly charged a violation of Code § 18.2-456. Code § 18.2-456 is located in Title 18.2, "Crimes and Offenses Generally," within Article 5, "Contempt of Court," of Chapter 10, "Crimes Against the Administration of Justice." When the plain language of Code § 18.2-478 requires that the accused be in custody "on a charge of criminal offense" and the charging document specifies Code § 18.2-456, which the General Assembly has classified as a "Crime[] Against the Administration of Justice," the specific capias Lopez was taken into custody for was within the intendment of Code § 18.2-478.

Additionally, we note that the matter underlying the capias was a failure to comply with conditions related to a charge of assault and battery, which is clearly a criminal offense. The conditions were imposed related to that criminal offense, and the instant capias was issued to vindicate the court and the conditions imposed. Thus, given its purpose, the capias appears to have been part of the underlying assault and battery proceeding.

As a result, the matter is analogous to Johnson v. Commonwealth, 21 Va. App. 102 (1995). In Johnson, defendant Johnson was wanted "for failing to appear for sentencing on robbery and firearms convictions." Id. at 104. After police took him into custody on his outstanding warrant, a written charge, he escaped by force and was subsequently charged with violating Code § 18.2-478. See id. at 105. The Commonwealth introduced the warrant at trial, id. at 106, and the arresting officer "knew that an arrest warrant . . . was outstanding against Johnson" and "was attempting to arrest [him] on that outstanding warrant," id. at 108. This Court went on to hold that "the warrant was not only relevant, but it was also sufficient to prove

---

[3] Although we are not bound by a party's concession of law, Doulgerakis v. Commonwealth, 61 Va. App. 417, 419 (2013), we appreciate Lopez's candor regarding this issue.

- 7 -

that if appellant was in custody, he was being held 'on a charge of criminal offense'" per Code § 18.2-478.  Id.

Like the Commonwealth in Johnson, the Commonwealth here introduced evidence of a written charge against Lopez when the officers took him into custody.  The capias that Chesapeake JDR issued commanded Echevarria "in the name of the Commonwealth forthwith to arrest [Lopez]" and "produce [him] . . . to show cause, if any, why [he] should not, pursuant to [] Code § 18.2-456 . . . be imprisoned, fined, or otherwise punished for . . . failure to obey an order of this court [to] comply with CCA" regarding supervision.  The issuance of the capias was directly related to Lopez's failure to comply with the conditions imposed upon him arising from his underlying assault and battery case, a criminal offense.  Just as formal proceedings for criminal robbery and use of firearms charges were in progress when Johnson escaped from custody in that case, formal proceedings for a criminal charge, assault and battery, had not been concluded when Lopez escaped from Echevarria's custody.  Just as the evidence in Johnson established that the arresting officer "knew that an arrest warrant . . . was outstanding against Johnson" and "was attempting to arrest [him] on that outstanding warrant," the evidence here established that Echevarria knew of Lopez's outstanding warrant and attempted to arrest him for that.  Thus, just as the evidence in Johnson proved that Johnson was in custody "on a charge of criminal offense" for "fail[ure] to appear" for "disposition" on criminal charges, the evidence here proved that Lopez was in custody "on a charge of criminal offense" when he was charged with contempt of court by a criminal statute, here, Code § 18.2-456, for failing to comply with the Chesapeake Community Agency for supervision in connection with his underlying criminal charge.

For these reasons, we find that "on a charge of criminal offense" in Code § 18.2-478 includes a capias for contempt of court, provided the capias specifies a criminal statute, here,

Code § 18.2-456. Because the charge of criminal contempt in this case is a "criminal offense" as that phrase is used in Code § 18.2-478, the trial court did not err in finding that Lopez had been charged with a criminal offense at the point of his initial arrest.

II. Disarming a Law Enforcement Officer – Intent to Impede Official Performance of Duties

Lopez also contends that the evidence was insufficient to prove that he attempted to disarm Echevarria of his stun weapon and disarmed Echevarria of his baton because the evidence failed to prove that he had the intent to impede Echevarria in the performance of his official duties when he touched Echevarria's stun weapon and baton.

Code § 18.2-57.02 provides, in pertinent part, as follows:

> Any person who knows or has reason to know a person is a law enforcement officer . . . who is engaged in the performance of his duties as such and, with the intent to impede or prevent any such person from performing his official duties, knowingly and without the person's permission removes a chemical irritant weapon or impact weapon from the possession of the officer or deprives the officer of the use of the weapon is guilty of a Class 1 misdemeanor. However, if the weapon removed or deprived in violation of this section is the officer's . . . stun weapon . . . he shall be guilty of a Class 6 felony.

Lopez's argument only challenges proof of intent to impede or prevent the performance of official duties, and such proof "inheres in the words or conduct of the accused." See Wells v. Commonwealth, 60 Va. App. 111, 119 (2012) (quoting Dove v. Commonwealth, 41 Va. App. 571, 578 (2003)). In "judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Speller v. Commonwealth, 69 Va. App. 378, 388 (2018). The credibility of one's stated intention is best resolved by the trial court, which has the opportunity to observe the testimony and demeanor of all witnesses. See Kelley v. Commonwealth, 69 Va. App. 617, 626 (2019) (emphasizing that an appellate court may only disturb the trial court's credibility determination if

the evidence is "inherently incredible, or so contrary to human experience as to render it unworthy of belief" (quoting Johnson v. Commonwealth, 58 Va. App. 303, 315 (2011))).

Here, the credibility of Lopez's stated intention was properly resolved by the trial court as it had the opportunity to observe the witnesses' testimony and demeanor. The trial court's determination was supported by credible evidence that consisted of testimony from the officers, video footage, and the capias for Lopez's arrest. This evidence proved that Quindara and Echevarria were law enforcement officers engaged in the performance of their official duties when they tried to arrest Lopez on the outstanding capias. Police dispatch sent the officers to the area near Lopez's residence because of a loud party complaint. As the officers interacted with Lopez, they wore their full uniforms, which displayed their badges of authority. When Quindara learned that Lopez was wanted, she told Lopez that he was under arrest, instructed him to turn around and place his hands behind his back, and the officers tried to place him in custody, as the capias commanded them to do. At that point, Lopez pulled away from the officers while staring at Echevarria and threatening, "I'm telling you right now, you ain't doing nothing. Don't do this to yourself." Lopez subsequently pulled away from Echevarria's grasp and shoved him before engaging in a violent struggle with the officer inside his residence, which began with Lopez grabbing Echevarria's stun weapon. From this credible evidence, proof of Lopez's intent to impede the officers from arresting him—performing their official duties—may be inferred from these threatening statements and Lopez's conduct.

While Lopez argues that he was merely trying to retreat and avoid being hurt by the officers, the credible evidence discussed shows more than dodging the attempts to place him into custody. Rather, Lopez repeatedly engaged Echevarria by shoving his chest, grabbing his stun weapon, lunging toward Echevarria, charging Echevarria as the officer retreated, shoving his face, trying to grab his head and take him to the floor, and shoving him toward the stairs, which

caused Echevarria to fall and lose his baton. This conduct—especially combined with the threatening statements Lopez made to Echevarria after learning that he was under arrest—entitled the trial court to disbelieve Lopez's self-serving testimony as to his stated intent and conclude that he lied to conceal his guilt.

For all of these reasons, the Commonwealth's evidence sufficiently proved that Lopez had the intent to impede Echevarria in the performance of his official duties when he grabbed Echevarria's stun weapon and baton. Because a rational factfinder could have found this element satisfied beyond a reasonable doubt, the trial court did not err.

### III. Assault and Battery of a Law Enforcement Officer – Offensive Contact

Lopez further contends that the evidence was insufficient to prove that he committed an assault and battery of Echevarria because the video footage of the incident "foreclosed a finding that Lopez took any affirmative action resulting in an offensive touching." Lopez adds that when Echevarria touched him, he pulled away, and the trial court's finding that Lopez intended to touch the officer was plainly wrong as "Lopez had no choice about the touching."

The version of Code § 18.2-57(C) in effect on May 18, 2019 provided, in pertinent part, as follows:

> [I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law enforcement officer . . . engaged in the performance of his public duties anywhere in the Commonwealth, such person is guilty of a Class 6 felony . . . .

Lopez's argument only challenges the act of battery—the unlawful touching of Echevarria. Because the statute does not define battery, we examine the common law definition. See Parish v. Commonwealth, 56 Va. App. 324, 329 (2010). "A battery is an unlawful touching of another," and we have defined touching as "objectively offensive or forcible contact with the

victim's person resulting in some manifestation of a physical consequence or corporeal hurt." Adams v. Commonwealth, 33 Va. App. 463, 468, 470 (2000).

Here, Echevarria testified to several instances in which Lopez touched him in a manner that was objectively offensive. In addition to the threatening statements Lopez made, as discussed in the preceding section, Lopez shoved Echevarria's chest and face, and he even grabbed Echevarria's head and shoulders to try to take him to the floor. That Lopez angrily touched Echevarria is clear when Lopez's contact was so violent it caused the officer to fall twice, which is a clear manifestation of a physical consequence.

Lopez's claim that the video footage of the incident "foreclosed a finding that Lopez took any affirmative action resulting in an offensive touching" is inaccurate for several reasons. First, the trial court found that it could be seen on the video footage "where [Lopez] pushe[d] the officer before he bolt[ed] for the house . . . ." Second, credible evidence, including the video footage and Echevarria's testimony, supports this finding. After Lopez escaped from Echevarria's grasp by force, he stated to Echevarria, "don't touch me bro," and shoved Echevarria's chest using both of his hands. Lopez's claim that he "had no choice about the touching" is incredible when his own evidence, in the form of video footage, shows his repeated aggressions toward the officer, including him later charging Echevarria as the officer retreated. Third, neither of the videos in evidence depicted the entirety of Lopez's violent encounter with Echevarria, so it follows that the trial court determined, after reviewing all of the evidence, that the Commonwealth's witnesses were more credible. The trial court did not believe Lopez's testimony that he merely pulled away each time Echevarria touched him, and we may only disturb the trial court's credibility determination if the evidence is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Kelley, 69 Va. App. at 626

(quoting Johnson, 58 Va. App. at 315).  That is not the case here when, as discussed, credible evidence in the form of testimony and video footage supported the trial court's determination.

For all of these reasons, the Commonwealth's evidence sufficiently proved that Lopez unlawfully touched Echevarria.  Because a rational factfinder could have found this element of battery satisfied beyond a reasonable doubt, the trial court did not err.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

Affirmed.