UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White

AJAE' D. JACKSON

v.      Record No. 0336-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 29, 2022

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

(Samantha Offutt Thames, Senior Assistant Public Defender;
Virginia Indigent Defense Commission, on brief), for appellant.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.


Convicted of assault and battery of a law enforcement officer after a jury trial, Ajae' D.

Jackson challenges the legal sufficiency of the evidence to sustain her conviction. Specifically, she

argues that any contact between her and the officer was incidental and she lacked the intent to harm.

After examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

We affirm the trial court's judgment.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On October 14, 2020, Detective Dupree and numerous deputies of the Stafford County Sheriff's Office went to a residence in response to a call reporting a "stabbing . . . involving a machete." When Detective Dupree arrived, a baby and several adults were sitting on a couch in the living room while Jackson, who was "staying" at the residence, was "belligerent[ly]" yelling at Deputy Buzzard. Jackson directed a racial epithet at Deputy Buzzard and other deputies, declaring her "hat[r]ed" for the sheriff's office. Jackson disregarded Deputy Buzzard's commands to "calm down" and "be still." Detective Dupree intervened to try to diffuse the stand-off, but Jackson was equally belligerent to him, "call[ing] [him] the N word as well" and yelling that she needed "items for her baby."

As deputies secured the crime scene, Detectives Dupree and Ridings escorted Jackson to the lower level of the residence so she could get her baby's items. Jackson continued using "racial slurs" as they entered a hallway that led to two rooms. Jackson entered a dimly lit room and rummaged through several bags but failed to find the items she wanted. Detective Dupree followed Jackson into the room and watched her closely as she searched, explaining to her that he was doing so because the police had not identified a suspect or located any weapons.

Having not located the desired items in the first room, Jackson entered the second room, which was dark but not "pitch black," and rummaged through several plastic bags. Detective Dupree again entered the room with Jackson, stood "a foot or so" away from her, and peered into each bag to ensure none contained a weapon. Detective Ridings remained in the hallway. Jackson "did not want" Detective Dupree "standing" next to her and "watching her go through" the bags.

After Jackson failed to find any items for her baby, Detective Dupree told her, "let's go." As Jackson turned to leave the room, she "threw her [right] arm out" and "up," striking Detective

- 2 -

Dupree's chest with her "elbow or forearm." Detective Dupree described the contact as "more of a shove" than a "bumping." Detective Ridings was standing behind Detective Dupree and could not see the assault but testified that Jackson was "yelling and cursing," in Detective Dupree's face, and "trying to . . . get around" him. Detective Ridings did not know the "exact moment" when the assault occurred.

When Detective Dupree told Jackson that she was under arrest for assault, she "immediately" resisted the officers as they tried to handcuff her. Eventually, the detectives placed Jackson on the floor, and Detective Ridings handcuffed her wrists. Detectives Dupree and Ridings denied that any officer had threatened Jackson, particularly that Detective Dupree would "fuck [Jackson] up." After the detectives escorted Jackson back upstairs, Detective Gildea assumed custody of her, placed her in his vehicle, and drove her to the magistrate's office to secure a warrant. Jackson told the magistrate that Detective Dupree "grabbed her by the arm" and then she nonverbally demonstrated an outward motion with her arm.

Brianna Amos, Jackson's friend, testified that she arrived at the residence after the police had arrived and approached the back door but did not enter. Instead, she watched through the door as Jackson walked into one of the downstairs rooms with three police officers. Amos said that Jackson tried to leave the room with diaper bags in her hand, but one of the officers stopped her and said, "tell me what really happened." Amos claimed that when Jackson tried to walk around the officer, he said, "I will F you up." When Jackson turned sideways to move past the officer, he "grabbed her arm and slammed her against the wall and slammed her on the floor." Amos denied that Jackson pushed, shoved, or threatened the officers in any way. Amos did not report what she heard and saw to the police, and she was not among the eight persons of interest the police identified at the scene.

Jackson agreed that she was "irate" and "belligerent" with the officers, explaining that she had woken up to a stranger holding "a gun to [her] neck" after spending the night in her car. When she entered the residence, her seven-month-old son was "wet" and hungry, so she was focused on changing and feeding him. Detective Dupree agreed she could get her son's items from the basement but followed her downstairs and "wouldn't let [her] leave" one of the rooms. Jackson stated that while two other officers guarded the door, Detective Dupree interrogated her about the stabbing incident. When Jackson tried to walk around Detective Dupree, he "immediately slammed [her] to the wall and onto the ground." Jackson denied that she had shoved Detective Dupree or "put [her] hands on him."

Jackson moved to strike the evidence, arguing that the witness testimony was inconsistent, especially regarding her demeanor. She argued that she was "trying to leave the room" and any contact with Deputy Dupree was incidental. The trial court denied Jackson's motion. After argument by counsel, the jury convicted Jackson of assault and battery of a law enforcement officer. Jackson appeals.

ANALYSIS

"When considering on appeal whether the evidence was sufficient to support a criminal conviction, 'we review factfinding with the highest degree of appellate deference.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting Code § 8.01-680). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to

substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

> [I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a . . . law-enforcement officer . . . engaged in the performance of his public duties anywhere in the Commonwealth, such person is guilty of a Class 6 felony.

Code § 18.2-57(C). Jackson does not dispute that she knew Detective Dupree was a law enforcement officer engaged in the performance of his public duties. Accordingly, the sole issue before us is whether the evidence supports the jury's determination that she committed an assault and battery on Detective Dupree. *See Montague v. Commonwealth*, 278 Va. 532, 540 (2009).

"Assault and battery are common law crimes." *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019) (quoting *Montague*, 278 Va. at 541). "The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010). "Placing an individual in reasonable apprehension of bodily harm constitutes an assault." *Kelley*, 69 Va. App. at 625. While a battery is "the actual infliction of corporal hurt on another that is done willfully or in anger," *Montague*, 278 Va. at 541, it is not necessary that the touching "result in injury to the [victim's] corporeal person. It is sufficient if it does injury to the [victim's] mind or feelings," *Parish*, 56 Va. App. at 330 (alterations in original).

"One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "Proving intent by direct evidence often is impossible." *Adams*, 33 Va. App. at 470. "'Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances,' including the 'words or conduct' of the alleged offender." *Secret v. Commonwealth*, 296 Va. 204, 228-29 (2018) (quoting *Commonwealth*

- 5 -

*v. Herring*, 288 Va. 59, 75 (2014)); *see also Turner v. Commonwealth*, 75 Va. App. 491, 504 (2022). "Words and prior conduct are highly relevant in shedding light on intent and the context within which certain actions transpired. A perpetrator's intent may be inferred from the nature of the overt act and the surrounding circumstances." *Parish*, 56 Va. App. at 331 (quoting *Clark v. Commonwealth*, 279 Va. 636, 642 (2010)). Moreover, the intent necessary to sustain an assault and battery conviction "may be imputed if the touching is 'done in a rude, insolent, or angry manner.'" *Id.* (quoting *Adams*, 33 Va. App. at 469). A fact finder's "decision on the question of intent is afforded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011) (citing *Robertson v. Commonwealth*, 18 Va. App. 635, 639 (1994)).

The undisputed evidence, including Jackson's own testimony, demonstrates that she was angry, irate, and belligerent with the officers at the residence that morning. *See Massie v. Firmstone*, 134 Va. 450, 462 (1922) ("No litigant can successfully ask a court or jury to believe that he has not told the truth."). She "did not want" Detective Dupree to stand next to her as she searched for her baby's items and repeatedly directed abusive language and "racial slurs" at Detective Dupree. After Jackson had been unable to find her baby's items, Detective Dupree told her, "let's go." In response, Jackson shoved Detective Dupree in the chest while "yelling and cursing" in his face. Thus, the jury reasonably could infer from Jackson's actions and words that the touching was not accidental or incidental and was "'done in a rude, insolent, or angry manner.'" *Parish*, 56 Va. App. at 331 (quoting *Adams*, 33 Va. App. at 469).

Nevertheless, Jackson argues that this Court should disregard the jury's finding based on the above evidence and substitute our own conclusion that any contact was "accidental" because she, Detective Ridings, and Amos testified that Jackson was trying to "get around" Detective Dupree when the alleged assault occurred. We are not at liberty, however, to substitute our own judgment

for that of the jury. *Lucas*, 75 Va. App. at 342. It is well established that weighing and balancing witness testimony "is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). That "evaluation[] of credibility" includes "choosing between competing accounts offered by different witnesses." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011). So "[w]hen the law says that it is for the trier of fact to judge the credibility of a witness, the issue is not a matter of degree." *Dalton*, 64 Va. App. at 526 (alteration in original) (quoting *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957)). Here, the jury weighed the competing accounts and found that Jackson intended to assault Detective Dupree. That factual conclusion is neither plainly wrong nor without evidentiary support, so we will not disturb it on appeal. Thus, the Commonwealth's evidence was competent, not inherently incredible, and sufficient to sustain Jackson's conviction for assault and battery of a law enforcement officer.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*