COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements
Argued at Leesburg, Virginia

UNPUBLISHED

DARIO FIGUEROA RODAS

v.      Record No. 1204-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
AUGUST 1, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Dawn M. Butorac, Public Defender, for appellant.

Mike Eaton, Assistant Attorney General (Jason S. Miyares, Attorney
General; Jonathan M. Larcomb, Assistant Attorney General, on
brief), for appellee.


Dario Figueroa Rodas ("Rodas") was convicted of attempted rape by a jury and sentenced

by the Fairfax County Circuit Court ("trial court") to ten years of active incarceration. On appeal,

Rodas contends that the trial court abused its discretion in its sentencing decision, specifically

alleging that he was punished for exercising his right to demand a jury trial. For the following

reasons, we affirm the trial court's judgment.

I. BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In 2019, Rodas and his daughter ("M.F.H.") left their home in Honduras and eventually immigrated to Virginia. By late 2020, Rodas and the nine-year-old M.F.H. rented a bedroom in Yakelin Hernandez's Fairfax County home. On January 26, 2021, M.F.H. was in bed when Rodas disrobed, climbed on top of his daughter, removed her clothing, and began to kiss and touch her stomach and legs. M.F.H. stated that her father used his "personal part" to do "stuff that [married people] do" to her "personal part." [1] M.F.H. eventually pushed Rodas off of her and fled the room.

M.F.H., who appeared pale and disheveled, encountered Hernandez in the hallway outside of the bedroom. She told Hernandez that Rodas "was touching her" and described how Rodas had put his mouth and hands on her body and genitals. As a result, Hernandez contacted the Herndon police and reported the incident.

When officers arrived, they interviewed M.F.H., Rodas, and others living in the house. Rodas was subsequently transported to the Herndon Police Department, where he denied his daughter's allegations before being arrested. Detective Calo subsequently interrogated Rodas while he was held at the Fairfax Adult Detention Center. Detective Calo, also a native Spanish speaker, believed that his fluency would help to "establish a conversation that flows naturally." During the recorded interview, Rodas admitted to a sexual encounter with his daughter, M.F.H. Rodas stated that M.F.H. "seduced him," in part, by moving her underwear out of the way. He also stated that she "grabbed his penis and put it into her vagina." Rodas also said that M.F.H. had moved up and down on his penis, but that he had not ejaculated.

---

[1] M.F.H. also referred to Rodas's anatomy as his "personal stuff," his "penga," and his "animala," and referred to her genitalia as her "personal stuff" and her "spoon." At trial, M.F.H. testified that this part of her body is what "girls use" to "have babies."

Rodas was indicted and subsequently tried by a jury for rape. Following a multi-day trial, the jury convicted Rodas of attempted rape. Since Rodas elected to be sentenced without a jury recommendation, the trial court scheduled a subsequent sentencing hearing and ordered that a presentence report be completed.

During the sentencing hearing, the Commonwealth presented the trial court with information that M.F.H. suffered from suicidal ideations as a result of the attempted rape. In arguing for an upward deviation from the sentencing guidelines, the Commonwealth also highlighted Rodas's claim that M.F.H. had seduced him. In response, Rodas told the trial court about his history in Honduras, his lack of a criminal record, and his minimal education. Rodas also advised the trial court that he "happily" would have pleaded "guilty to something" other than rape to "avoid[] a trial, but [he] didn't have that option." He explained the unsuccessful attempts defense counsel made to engage the Commonwealth in plea negotiations, spanning from before the preliminary hearing through the middle of trial.

After hearing argument concerning sentencing wherein the Commonwealth argued that Rodas should be sentenced to ten years, the trial court deviated from the applicable sentencing guidelines and sentenced Rodas to the maximum statutorily allowed period of ten years' incarceration. When pronouncing sentence, the trial court stated:

> When the [c]ourt looked at what this case was, when you have a young lady in a transformational age from nine to twelve, before she becomes a young woman, her father is to protect her, and you were the wolf at the door, sir.
>
> The [c]ourt found the statements that she seduced you at nine as despicable. No remorse has been shown. And the [c]ourt finds that 10 years is the appropriate sentence for this case.

Rodas objected, contending that "[t]he fact that he has not shown remorse" was "inappropriate" for the trial court to consider. The trial court overruled his objection and clarified that the trial court

focused on his "lack of remorse to the police, [and] lack of remorse for the injury to his child," concluding that "[i]t's certainly something that the [c]ourt could consider on guidelines."

In its written explanation for deviating above the discretionary sentencing guidelines—which recommended a period of incarceration between seven months and two years, with a midpoint of one year and three months—the trial court noted that an upward departure was warranted under the "facts of the case," including Rodas's relationship to the victim, her young age, and his claim that his nine-year-old child had "seduc[ed] him." The trial court also noted that Rodas's lack of remorse, and the psychological "[d]amage to [the] victim" evinced by her "suicidal ideation," provided further support for the upward departure. Rodas appealed.

II. ANALYSIS

A. *Standard of Review*

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011) (citing *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

B. *The trial court did not abuse its discretion when weighing mitigating and aggravating factors in formulating a sentence.*

Rodas contends that the trial court abused its discretion when it failed to consider his background and his low risk to reoffend; however, the record does not support his claims that the trial court gave "no consideration to relevant mitigation evidence."

- 4 -

It was within the trial court's purview to weigh the mitigating factors Rodas presented, including his lack of criminal history, his limited education, and his sustained periods of employment. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Rodas mistakenly conflates failure to discuss his mitigation evidence with a failure to consider it. "Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992). The trial court is not obligated to articulate every factor it considered and the weight given to each one. "Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)).

In addition, the trial court properly balanced those mitigating factors Rodas asserted against significant aggravating factors, including the familial relationship between Rodas and his daughter and the impact this crime had on her well-being. Further, the trial court properly found "despicable" Rodas's claim that his nine-year-old daughter had seduced him. "[T]he record indicates that the trial court had before it adequate evidence to support a conclusion that mitigating evidence mustered by the defense did little or nothing to qualify the severity with which this defendant should be sentenced." *Bassett*, 13 Va. App. at 584. The record here supports a ten-year sentence, based, in part, on the aggravating factors outweighing Rodas's mitigation evidence.

C. *The trial court did not err in imposing ten years' incarceration.*

Rodas claims it was error for the trial court to sentence him to ten years' incarceration. We disagree.

To the extent Rodas asserts a proportionality challenge to his sentence, we reject it. This Court declines to engage in a proportionality review in cases that do not involve life sentences

- 5 -

without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

Under settled principles, we consider only whether the sentence fell outside the permissible statutory range.[2] *See Minh Duy Du*, 292 Va. at 564; *Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine*, 18 Va. App. at 339. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Rodas was sentenced within the statutory range set by the legislature. *See* Code §§ 18.2-10, 18.2-26, 18.2-61. Thus, our review is complete. *Thomason*, 69 Va. App at 99.

D. *The trial court did not penalize Rodas for pleading not guilty and exercising his right to a jury trial.*

Finally, Rodas alleges that the sentence the trial court imposed was punishment "for [him] asserting his right to trial." We disagree.

---

[2] Resisting this clear and binding precedent, Rodas urges this Court to nevertheless review the trial court's statutorily allowable sentence. This Court cannot overrule the standard of review for sentencing decisions set by the Supreme Court of Virginia. *See Gionis v. Commonwealth*, 76 Va. App. 1, 16 (2022) ("[We] are bound by the decisions of the Supreme Court of Virginia and are without authority to overrule [it]." (second alteration in original) (quoting *O'Malley v. Commonwealth*, 66 Va. App. 296, 301 (2016))). Accordingly, we decline to engage in this review.

Rodas argues, in essence, that the trial court was not allowed to consider his lack of remorse, because doing so was a punishment for having maintained his innocence. In support, Rodas notes only the fact that he was sentenced to the statutory maximum term of incarceration and the trial court's finding that he had exhibited a "lack of remorse." Beyond his bare assertion, Rodas points to no statements of the trial court concerning his decision to proceed to trial, and a thorough review of the record yields none.

It is well established that "[a]ppellate courts do 'not fix upon isolated statements of the trial judge taken out of the full context in which they were made.'" *Young v. Commonwealth*, 70 Va. App. 646, 655 (2019) (alteration in original) (quoting *Vay v. Commonwealth*, 67 Va. App. 236, 253 (2017)).[3] Reading the trial court's statements about Rodas's lack of remorse in their full context and in the light most favorable to the Commonwealth, we cannot find that those statements indicate that Rodas was punished for exercising his right to trial.

Rodas's entire argument erroneously conflates showing remorse with accepting responsibility, but "an expression of remorse does not presuppose acceptance of criminal responsibility." *Smith v. Commonwealth*, 27 Va. App. 357, 364 (1998). In the context of sentencing, "remorse includes 'sympathy' or 'concern for the victims of the crimes for which he was convicted.'" *Lawlor v. Commonwealth*, 285 Va. 187, 242 (2013) (quoting *Smith*, 27 Va. App. at 364-65). "[O]nce [a defendant is] found guilty, the trial court [does] not err in considering his lack of remorse as one factor in sentencing and [does] not abuse its discretion in imposing sentences within the statutory requirements." *Smith*, 27 Va. App. at 364. In fact, a "trial court's present tense observation of a defendant's lack of remorse, so long as it is not explicitly linked to a defendant's prior claim of innocence or not guilty plea . . . , is an

---

[3] The statements about remorse do not support Rodas's claim. In offering that he could have shown remorse "to the police" and "for the injury to his child," the trial court gave two concrete examples that are compatible with a plea of not guilty.

appropriate factor to consider at sentencing." *Id.* at 363 (quoting *Saenz v. State*, 620 A.2d 401, 407 (Md. Ct. Spec. App. 1993)). Rodas's "lack of concern" for his daughter's wellbeing was "relevant when assessing his future dangerousness," and thus was appropriate to consider at sentencing. *Id.* at 364. The record shows that Rodas's lack of remorse for the offense and its far-reaching impact on his young daughter, and not his decision to go to trial, guided the trial court's sentencing decision.

## III. CONCLUSION

The trial court did not abuse its discretion in sentencing Rodas. Accordingly, we affirm the trial court's judgment.

*Affirmed.*