COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Causey

LATISA DANIELLE HUBBARD

MEMORANDUM OPINION*
v.      Record No. 0007-22-3                    PER CURIAM
                                                JANUARY 17, 2023

LYNCHBURG DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
James F. Watson, Judge

(Jordan B. Davies; Jordan B. Davies, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Susan L. Hartman, Assistant City Attorney; Yvonne Z. Schewel,
Guardian *ad litem* for the minor children, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Latisa Danielle Hubbard ("mother") appeals orders entered by the Circuit Court of the City

of Lynchburg ("circuit court") terminating her residual parental rights to her two children, K.H. and

T.H.[1] (collectively "the children") and approving the foster care goal of adoption. On appeal,

mother argues that there was insufficient evidence to support the involuntary termination of her

parental rights. She asserts that her "continued involvement in the lives of her children,

demonstrates her ability to make changes in her life." Because there is clear and convincing

evidence to support the circuit court's finding that (1) termination of mother's residual parental

rights was in the best interest of the children and (2) mother's residual parental rights regarding a

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We use initials, instead of the children's names, in an attempt to better protect their
privacy.

sibling of the children had previously been involuntarily terminated, we affirm. *See* Code § 16.1-283(E)(i).

BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to six children, but only K.H. and T.H., who were five and two years old, respectively, at the time of removal, are the subject of this appeal.[3] In 2016, the City of Lynchburg Juvenile and Domestic Relations District Court ("the JDR court") terminated mother's parental rights to two of her older children under Code § 16.1-283(B) and (C)(2). Mother did not appeal the rulings.

In June 2020, K.H and T.H. came to the attention of the Lynchburg Department of Social Services ("Department") due to a report of physical abuse from the police department. The police department received a complaint from mother's neighbor stating that she saw "a lady 'doing something to the child.' The neighbor said she saw the child 'fly' across the room." Another neighbor informed the police that she witnessed mother pushing one child and "dump[ing] [the

---

[2] The record in this case is sealed. Nevertheless, this appeal necessitates unsealing limited portions of the record, including factual findings, to resolve the issues appellant has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[3] K.H. and T.H. have different biological fathers. The City of Lynchburg Juvenile and Domestic Relations District Court terminated the parental rights for both fathers, and neither appealed.

other child] like garbage." The police notified the Department that mother had a criminal history of child abuse.

The Department went to mother's apartment and observed that it was in a "deplorable state" with "clusters and clutters of clothes and all manner of things on the floor including but not limited to shoes, toys, books, baskets, bottles of soda, bags of paper towels, etc." The Department found the children wearing only underwear and saw marks and bruises "all over" K.H.'s body. K.H. was unable to tell the Department what happened "due to paucity of speech." K.H., however, was able to express to the Department "mom did, mom did," while pointing to her bruises. Mother told the Department that she became frustrated because K.H. could not find a bracelet and that she grabbed K.H. by the arm and her fingernails caused the bruises on K.H.'s arm. A forensic exam of K.H. revealed "multiple injuries" on the head, neck, torso, and extremities that were not injuries "normally see[n] in normal childhood play."

The Department informed mother that the children were being removed from the home "due to the concerns of their safety and also due to the deplorable state of her apartment." Mother gave the Department permission to remove the children from the home.

Following the children's removal, the Department provided services to mother, including counseling and parenting coaching. The Department also approved mother for independent living skills, designed to assist mother with day-to-day functional activities as well as the cleanliness and hygiene of mother's home. The Department required mother to undergo psychological, parenting, and substance abuse assessments. The Department also recommended that mother engage in domestic violence services.

The Department maintained regular contact with mother and reminded her of the importance of participating in services. Mother began outpatient counseling and parenting education services in October 2020 and the independent living services in March 2021. Although mother participated in

both services, she did not "fully engage" and she "was very clear in both of those services . . . that she didn't have any areas . . . that she needed to address" and "that she felt like her parenting was just fine." Mother also did not comply with the domestic violence services.

Mother completed the psychological evaluation in April 2021. The evaluating psychologist, Dr. Timothy Barclay, determined that mother's "personality inventory" "indicated that she struggles with personal incite [sic] and introspection into her own behavior and her circumstances, [she is] very cynical and negative, [and] struggles with delusional type beliefs." Dr. Barclay testified that mother struggled with her "parenting capacity," specifically with "task accomplishment," which refers to "the ability for her as a parent to engage children in active problem solving to solve daily problems that come up." Dr. Barclay found that mother had "psychological difficulties, such as delusional type beliefs, depression, anxiety . . . and admitted to struggling with depression . . . ." Dr. Barclay recommended that mother receive medication management and therapy to address her psychosis, anxiety, and depression, but admitted that her "psychological difficulties" "would make her resistant to treatment." Dr. Barclay determined that the welfare of the children would be at risk if mother did not receive active treatment for her mental health.

The Department supervised visitations between mother and the children. Many of the visitations were virtual, via Zoom, due initially to the COVID-19 pandemic and then because of mother's newborn baby.[4] Mother was resistant to resuming in-person visitations but did so when the Department required it. During the in-person visits, mother "was not able to control" the children or "re-direct" them and failed to put "appropriate boundaries or structure in place." The children would "physically fight," and mother "did not get up to try to stop that." Mother brought flash cards and books to the visitations. She often took on the "role as a teacher an[d] it seemed like

---

[4] Mother gave birth to a new child during the pendency of this matter, and mother appears to have a pending case regarding visitation and custody of this child. Mother's newborn child is not subject to this appeal.

she was far more comfortable in doing that than . . . doing the motherly role [with] connectiveness or nurturing."

The Department placed the children together in the same foster home, where they both thrived. K.H. received an Individualized Education Program at school and speech services; she showed improvement. Both children formed an attachment and bond with the foster family. The foster family expressed interest in adopting the children.

In April 2021, the Department petitioned for termination of mother's parental rights. The Department was concerned about mother's commitment to rectifying the circumstances that led to the children's placement in foster care. Mother made "minimal progress" toward the goal of returning the children home. She continued to minimize her role in K.H.'s abuse and remained reluctant to participate in mental health care treatment. Mother also failed to fully engage in the services the Department offered to help her rectify the "safety issues" in her home, including improving the clutter and cleanliness. The Department determined that mother failed to admit her responsibility, she had "not been able to do any true and honest work with the service providers," and remained unable to meet the needs of K.H. and T.H.

In April 2021, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court.

In October and November 2021, the parties convened for a hearing in the circuit court.[5] During the trial, the Department admitted into evidence the 2016 orders terminating mother's rights to two of her older children. The Department presented evidence regarding the severity of the physical abuse inflicted upon K.H. It also presented evidence that despite all the services offered,

_____

[5] At the time of the hearing, mother had pending criminal charges "in conjunction with what occurred in reference to these children." The Department admitted into evidence mother's indictment on charges of child endangerment and assault and battery against a family member regarding the older child. The trial court continued mother's criminal matter to the November Term of 2021 to be set for trial. Charges were pending at the time of the termination hearing.

mother still had not demonstrated significant progress or change at the time of the circuit court's hearing.

After hearing the evidence and arguments, the circuit court found it in the children's best interests to approve the foster care goal of adoption and terminate the mother's parental rights under Code § 16.1-283(C)(2) and (E)(i). The court found that there was clear and convincing evidence that the children had been subjected to neglect and K.H. had been subjected to physical abuse. The court determined that the children were initially placed in foster care due to the deplorable state of the home and the signs of physical abuse on K.H.

In determining the children's best interests, the court "considered the children's ages, their physical and mental conditions" in addition to the mother's "age, physical and mental conditions," "relationships with the children[,]" "signs of physical abuse [to K.H.]," and "the services provided by the Department of Social Services to [mother]." The court found that mother had a "complicated psychological diagnosis" that "adversely [a]ffected her parenting and placed her children at risk." The court also found that the Department made reasonable efforts to provide mother with various services, but mother was still unwilling or unable to substantially remedy the conditions. The final order terminating mother's parental rights and approving the foster care goal of adoption was entered in December 2021. This timely appeal follows.

STANDARD OF REVIEW

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier*

*Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(C)(2) because there was insufficient evidence to demonstrate that she was unwilling or unable to substantially remedy the conditions that led to or required the continuation of the children's foster care placement. She asserts that she completed several of the required tasks, consistently visited the children, and remained involved in their lives demonstrating "a willingness and ability to relate to her children and attend to their physical, emotional, and educational needs." Mother also contends that her ability to raise her older adult daughter, with whom she continues to live, suggests that she could adequately raise and care for K.H. and T.H. in the future. Mother does not, however, challenge the sufficiency of the evidence to support termination under Code § 16.1-283(E)(i). Her failure to do so is fatal to her appeal because the uncontested finding of the trial court independently provided a valid basis to terminate mother's residual parental rights.

Mother's waiver of her right to challenge the court's decision under Code § 16.1-283(E)(i) moots her claim. Terminations under Code § 16.1-283(C) and (E) provide distinct, "individual bases upon which a petitioner may seek to terminate residual parental rights." *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003). "[I]n 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'" *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)). On appeal, a reviewing court need not address alternate holdings of a trial court if the trial court rendered an "independently dispositive ruling." *Commonwealth v. Lambert*, 292 Va. 748, 759 (2016). *See also Boone v. C. Arthur Weaver Co.*, 235 Va. 157, 161

(1988) ("Because we find the trial court's ruling to be correct, it is unnecessary to examine [appellant's] second and third alternative theories [of trial court error].").

Here, the circuit court's termination of mother's parental rights under Code § 16.1-283(E)(i) makes it unnecessary for the Court to examine mother's arguments regarding termination under Code § 16.1-283(C)(2). Even if we were to agree with mother regarding the sufficiency of the evidence to support termination pursuant to Code § 16.1-283(C)(2), her parental rights would remain terminated because of the circuit court's unchallenged decision to terminate mother's parental rights pursuant to Code § 16.1-283(E)(i). We therefore do not reach this assignment of error.

Notwithstanding mother's waiver of the opportunity to challenge the circuit court's finding under Code § 16.1-283(E)(i), this Court must confirm "that the alternative holding is indeed one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the trial court's decision." *Johnson*, 45 Va. App. at 117. We hold that the record supports the circuit court's decision to terminate mother's parental rights under Code § 16.1-283(E)(i).

Code § 16.1-283(E)(i) provides that parental rights may be terminated if the court finds, based upon clear and convincing evidence, that it is (1) in the best interests of the child and that (2) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated. *See* Code § 16.1-283(E)(i). This statutory scheme is "designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child." *Layne v. Layne*, 61 Va. App. 32, 37 (2012) (quoting *Radar v. Montgomery Cnty. Dep't of Soc. Servs.*, 5 Va. App. 523, 526 (1988)).

> In determining what is in the best interests of the child, the circuit court must evaluate and consider many factors: the age and physical

and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

*Thach*, 63 Va. App. at 169 (citing *Barkey v. Commonwealth*, 2 Va. App. 662, 668 (1986)).

Here, the circuit court properly found that the first requirement of the statute is satisfied because there is ample support in the record that termination of mother's residual parental rights was in the best interest of the children. The circuit court found that mother had "a complicated psychological diagnosis" that "adversely [a]ffected her parenting abilities and placed her children at risk." The Department presented evidence that although mother participated in some of the services, she did not fully engage in all the requirements and had been very resistant to taking the recommended medications. Moreover, despite her participation in some of the services, mother failed to recognize her role in the situation that led to the children's placement in foster care. The Department also presented evidence that the children were thriving in their foster care placement, that K.H. had received specialized education services, and that both children had bonded with their foster family. Finally, at the time of the circuit court hearing, the children had been in foster care for over sixteen months. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Accordingly, we hold that the circuit court properly found by clear and convincing evidence that the termination of mother's parental rights was in the best interests of the children.

The record also supports the circuit court's finding that the second requirement of Code § 16.1-283(E)(i) is satisfied. As mother concedes, her parental rights to the children's older

siblings were involuntarily terminated. Because there is clear and convincing evidence to support both prongs of the statute, we are satisfied that Code § 16.1-283(E)(i) was applicable and provided an independent basis to support the circuit court's decision.

The record supports the circuit court's finding that the termination of mother's parental rights under Code § 16.1-283(E)(i) was in the children's best interest because mother failed to recognize her responsibility for the conditions that led to K.H. and T.H.'s placement. We are satisfied that Code § 16.1-283(E)(i), properly applied to the facts, legally constitutes a freestanding, separate, and independent basis in support of the circuit court's decision to terminate mother's parental rights. Mother has not challenged this ground for termination on appeal, forfeiting any subsequent right to do so and mooting her challenges to the circuit court's decision based on another provision of the statute. Therefore, we will not reverse the decision below.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed*.